# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) ) ) ) ) ) ) | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before the Honorable Marvin E. Aspen) |

## FIDELITY THIRD-PARTY DEFENDANTS' THIRD AMENDED OBJECTIONS AND ANSWERS TO AMERIQUEST'S INTERROGATORIES (SET ONE) PROPOUNDED ON FIDELITY ENTITIES

Third-Party Defendants Chicago Title Insurance Company, Commonwealth Land Title Insurance Company, Fidelity National Title Insurance Company, Lawyers Title Insurance Company, Ticor Title Insurance Company, American Pioneer Title Insurance Company, and Transnation Title Insurance Company (collectively the "Fidelity Third-Party Defendants"), by and through their undersigned counsel of record, hereby supplement their Responses to Third-Party Plaintiff Ameriquest Mortgage Company's ("AMC") Interrogatories (Set One) Propounded on Fidelity Entities as follows:

### GENERAL OBJECTIONS

1. The Fidelity Third-Party Defendants object to AMC's interrogatories to the extent they purport to impose obligations upon the Fidelity Third-Party Defendants that are inconsistent with or greater than the duties imposed by the Federal Rules of Civil Procedure.

2. The Fidelity Third-Party Defendants object to AMC's interrogatories to the extent they seek information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege. Such information will not be provided. In the event that any such information is disclosed, such disclosure is inadvertent and does not constitute a waiver of

privilege. In responding to the interrogatories, the Fidelity Third-Party Defendants do not waive, but expressly preserve, all such privileges.

3. The Fidelity Third-Party Defendants object to AMC's interrogatories to the extent they seek information that is outside the Fidelity Third-Party Defendants' possession, custody, or control.

4. The Fidelity Third-Party Defendants object to AMC's interrogatories in their entirety insofar as they purport to require the Fidelity Third-Party Defendants to obtain and review electronically-stored information that is not reasonably accessible.

5. The Fidelity Third-Party Defendants' responses to AMC's interrogatories are based on information currently available, at this stage of the litigation. The Fidelity Third-Party Defendants' investigation and discovery in this matter is ongoing. Further information and examination may disclose additional information related to AMC's interrogatories. As such, the Fidelity Third-Party Defendants' responses are provided without prejudice to their right to supplement these responses and provide additional information, or object to the production of further information, subsequently discovered.

6. The Fidelity Third-Party Defendants object to the definition of "Chart" to the extent that the "Chart" includes combinations of states and Fidelity Third-Party Defendants that are no longer at issue in the claims asserted against the Fidelity Third-Party Defendants. To the extent that the "Chart" seeks information not involving any of the cases included in the October 22, 2012 list of opt-out cases, provided to the Fidelity Third-Party Defendants by AMC's counsel, under which AMC continues to pursue third-party claims against the Fidelity Third-Party Defendants (the "October 2012 list"), the Fidelity Third-Party Defendants object to any

such interrogatory on the grounds it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

7. To the extent that the Fidelity Third-Party Defendants reference prior discovery requests served upon them in either this proceeding or in the *Terry v. Ameriquest Mortgage Company* lawsuit (the "*Terry* lawsuit"), the Fidelity Third-Party Defendants incorporate herein by reference the objections, responses, and any judicial rulings regarding those prior discovery requests.

8. These General Objections are incorporated by reference into each of the Fidelity Third-Party Defendants' specific responses below.

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1:

Identify by Bates number(s) Documents reflecting each form of Blanket Closing Protection Letter used by Third-Party Defendants for each of the corresponding states marked with an "X" on the Chart.

**ANSWER:** Subject to and without waving any of the General Objections stated above, the Fidelity Third-Party Defendants state that the answer to this interrogatory can be found in exhibits to the Alex Ricks and Donald Cole depositions, taken in the *Terry v. Ameriquest Mortgage Company* lawsuit.

Further answering, the Fidelity Third-Party Defendants refer AMC to their response to Interrogatory No. 2 below.

### INTERROGATORY NO. 2:

Describe how Blanket Closing Protection Letters were issued by Third-Party Defendants for each of the corresponding states marked with an "X" on the Chart including, but not limited to, the process for completing the letters such as whether blanks in the regarding line or other particular language were used to indicate that a closing protection letter is

3

blanket, any characteristics that would distinguish it from a transaction-specific letter, any approval process, and any website for generation of the letter.

**ANSWER:** Subject to and without waving any of the General Objections stated above, the Fidelity Third-Party Defendants state that the answer to this interrogatory as it relates to blanket closing protection letters created out of the AgenTrax system can be found in the transcript of, and exhibits to, the deposition of Alex Ricks and Donald Cole, taken in the *Terry v. Ameriquest Mortgage Company* lawsuit. The Fidelity Third-Party Defendants further state that the answer to this interrogatory as it relates to Ticor Title Insurance Company in Illinois can be found in the transcript of, and exhibits to, the deposition of David Scott, also taken in the *Terry* action. The Fidelity Third-Party Defendants further state that the answers to this Interrogatory as it relates to Chicago Title Insurance Company in Alabama, and Fidelity National Title Insurance Company in Connecticut, can be found in the transcript of, and exhibits to, the deposition of Alex Ricks and Donald Cole, taken in the *Terry v. Ameriquest Mortgage Company* lawsuit.

Further answering, the Fidelity Third-Party Defendants state the following:

### ALABAMA

#### 1. Chicago Title Insurance Company

Prior to the implementation of AgentTrax, agents generated their own closing protection letters ("CPLs") through Chicago Title's local agency website, which was located at the url alma.ctic.com. Prior to the implementation of the web-based system, Chicago Title generated CPLs manually upon receiving a request from an agent. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would be left blank or removed from the CPL. In some instances, the lender would require that certain specific language be included in a multi-

4

transaction CPL, like the insertion of the terms "All Closings" or "All Closings in 2004." Chicago Title would follow those lenders' instructions. Accordingly, one would need to look at the lender's instructions to determine whether a blank re: line was intended to create a multi-transaction CPL rather than simply an instance in which the agent mistakenly failed to include transaction-specific information.

Samples of multi-transaction CPLs have been produced and Bates-labeled TICOR0001953-63. The Fidelity Third-Party Defendants have been unable to locate any data from the local agency website.

### 2. Fidelity National Title Insurance Company

Prior to the implementation of AgentTrax, Fidelity issued CPLs through a website located at the url neticsl.com. Some agents used the web-based system to generate their own CPLs while other agents requested that Fidelity generate the CPLs and then transmit them to the agent. When Fidelity was asked to generate CPLs for its agents, Fidelity used the same web-based system that was used by the agents. Prior to the implementation of the web-based system, Fidelity always manually generated CPLs upon receiving a request from an agent. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would be left blank.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs or any data from the Pre-AgentTrax web-based system.

### 3. Commonwealth Land Title Insurance Company and Lawyers Title Insurance Company

Prior to the implementation of AgentTrax, agents generated their own CPLs through LandAmerica's website, which used the AgentExtra system. Prior to the implementation of AgentExtra, Commonwealth Land Title and Lawyers Title ("Commonwealth/Lawyers") generated CPLs manually upon receiving a request from an agent. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address.

A form multi-transaction CPL has been produced and Bates-labeled FIDELITY-AQ0001986-87. Data from the AgentExtra system has been produced and Bates-labeled FIDELITY-AQ0001762-70, 1779-90, and 1793-1823.

### 4. Ticor Title Insurance Company

From April 2004 to the implementation of AgentTrax, Ticor generated CPLs manually upon receiving a request from an agent. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address.

From 2001-2004, Ticor operated out of the same office as Chicago Title. For much of this period, agents generated their own CPLs through Chicago Title's local agency website, which was located at the url alma.ctic.com. Prior to the implementation of the web-based system, Ticor generated CPLs manually upon receiving a request from an agent. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would be left blank.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs or any data from the Pre-AgentTrax web-based system.

## CONNECTICUT

### 1. American Pioneer Title Insurance Company

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about American Pioneer's policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

### 2. Chicago Title Insurance Company

Prior to the implementation of AgentTrax, Chicago Title issued CPLs through a website located at the url cticct.com. Some agents used the web-based system to generate their own CPLs while other agents requested that Chicago Title generate the CPLs and then transmit them to the agent. When Chicago Title was asked to generate CPLs for its agents, it generated them manually. Prior to the implementation of the web-based system, Chicago Title always manually generated CPLs upon receiving a request from an agent. Chicago Title only issued a blanket CPL when an agent required one to get on a lender's list of approved agents. The purpose of such a blanket CPL was to demonstrate to the lender that the agent had an established relationship with Chicago Title. The substance of the transaction-specific and blanket CPLs was identical. The blanket CPLs, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a blanket CPL, the re: line would be left blank or completely whited out. Generally, however, the individual generating the CPL may

7

have inserted the terms "All Transactions," "All Closings," "Specimen," or "Blanket Closing Protection Letter" on the CPL to indicate that it was a blanket CPL.

Sample blanket CPLs generated using the Pre-AgentTrax web-based system have been produced and Bates-labeled FIDELITY-AQ0001994-97. The Fidelity Third-Party Defendants have been unable to locate any sample blanket CPLs generated manually.

### 3. Commonwealth Land Title Insurance Company and Lawyers Title Insurance Company

Prior to the implementation AgentTrax, Commonwealth/Lawyers generated CPLs manually upon receiving a request from an agent. Agents were also able to generate their own CPLs using computer software and pre-signed Word templates provided by Commonwealth/Lawyers. Agents only requested multi-transaction CPLs to get on a lender's list of approved closing attorneys. The purpose of such a multi-transaction CPL was to demonstrate to the lender that the agent had an established relationship with Commonwealth/Lawyers. Thus, the multi-transaction CPL could only be used for transactions closed by the particular agent for the particular lender specified on the CPL. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would be left blank or removed from the CPL.

Form multi-transaction CPLs have been produced and Bates-labeled FIDELITY-AQ0001988-91. A sample multi-transaction CPL has been produced and Bates-labeled FIDELITY-AQ0001992-93.

### 4. Fidelity National Title Insurance Company

Prior to the implementation of AgentTrax, Fidelity generated CPLs manually upon receiving a request from an agent. Some agents generated their own CPLs using templates from

8

third-party software called Display Soft. Fidelity issued blanket CPLs solely to permit an agent to get on a lender's list of approved agents. The purpose of such a blanket CPL was to demonstrate to the lender that the agent had an established relationship with Fidelity. The substance of the transaction-specific and blanket CPLs was identical. The blanket CPLs, however, did not contain any transaction-specific information, such as a borrower name or address, but instead contained the terms "All Closings," "All Connecticut Closings," or "Blanket" in the re: line or the "Client" line. Fidelity's practice was to not leave the re: line blank on a blanket CPL.

Sample blanket CPLs have been produced and Bates-labeled FIDELITY-AQ0001998-2009.

### 5. Ticor Title Insurance Company

Prior to the implementation of AgentTrax, Ticor generated CPLs manually upon receiving a request from an agent. Some agents generated their own CPLs from a template using third-party software called SoftPro. Ticor issued blanket CPLs solely to permit an agent to get on a lender's list of approved agents. The purpose of such a blanket CPL was to demonstrate to the lender that the agent had an established relationship with Ticor. The substance of the transaction-specific and blanket CPLs was identical. The blanket CPL, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, the re: line would be left blank. At times, however, the individual generating the CPL may have inserted the terms "Sample, or "Specimen" in the re: line to indicate that it was a multi-transaction CPL.

The Fidelity Third-Party Defendants have been unable to locate any sample blanket CPLs.

## ILLINOIS

### 1. American Pioneer Insurance Company

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about American Pioneer's policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

### 2. Chicago Title Insurance Company

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about Chicago Title's policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

### 3. Commonwealth Land Title Insurance Company and Lawyers Title Insurance Company

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about Commonwealth/Lawyers' policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

### 4. Fidelity National Title Insurance Company

Prior to the implementation of AgentTrax, agents generated their own CPLs through a web-based system. Prior to the implementation of the web-based system, Fidelity generated CPLs manually upon receiving a request from an agent. The substance of the transaction-

specific and multi-transaction CPLs was identical. Neither single- nor multi-transaction CPLs were required to contain any transaction-specific information.

Sample multi-transaction CPLs have been produced and Bates-labeled FIDELITY-AQ0002010-13. The Fidelity Third-Party Defendants have been unable to locate any data from the Pre-AgentTrax web-based system.

### 5. Ticor Title Insurance Company

The answer to this interrogatory as it relates to Ticor Title Insurance Company in Illinois can be found in the transcript of, and exhibits to, the deposition of David Scott, taken in the *Terry* action.

## MASSACHUSETTS

### 1. American Pioneer Insurance Company

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about American Pioneer's policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

### 2. Chicago Title Insurance Company/Ticor Title Insurance Company

Prior to the implementation of AgentTrax, Chicago Title and Ticor Title issued CPLs through a website located at the url www.cticticorne.com. Chicago Title and Ticor Title may also have issued CPLs manually during this period. Prior to the implementation of the web-based system, Chicago Title and Ticor Title generated CPLs manually upon receiving a request from an agent. The substance of the transaction-specific and multi-transaction CPLs was similar. To the best of the Fidelity Third-Party Defendants' knowledge and belief, the multi-transaction

CPLs did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would generally be left blank or would contain an agent name or other non-transaction-specific language.

A form multi-transaction CPL has been produced and Bates-labeled FIDELITY-AQ0002017-19. Sample multi-transaction CPLs have been produced and Bates-labeled FIDELITY-AQ0002020-29, 33-34, and 43-44.

### 3. Commonwealth Land Title Insurance Company and Lawyers Title Insurance Company

Prior to the implementation of AgentTrax, agents generated their own CPLs through LandAmerica's website, which used the AgentXtranet system. Prior to the implementation of AgentXtranet, Commonwealth/Lawyers generated CPLs manually upon receiving a request from an agent. The Fidelity Third-Party Defendants were unable to obtain any information about Commonwealth/Lawyers Title's policies or practices during the relevant period with respect to multi-transaction CPLs.

Form multi-transaction CPLs have been produced and Bates-labeled FIDELITY-AQ0002014-16. Data from the AgentXtranet system has been produced and Bates-labeled FIDELITY-AQ0001762-70, 1779-90, and 1793-1823.

### 4. Fidelity National Title Insurance Company

Prior to the implementation of AgentTrax, Fidelity generated CPLs manually upon receiving a request from an agent. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would contain an agent name instead of transaction-specific information.

12

Sample multi-transaction CPLs have been produced and Bates-labeled FIDELITY-AQ0002030-32.

### 5. Transnation Title Insurance Company

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about Transnation's policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

## MICHIGAN

### 1. American Pioneer Insurance Company

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about American Pioneer's policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

### 2. Chicago Title Insurance Company

Prior to the implementation of AgentTrax, Chicago Title issued CPLs manually. Some agents generated their own CPLs while other agents requested that Chicago Title generate the CPLs and then transmit them to the agent. Chicago Title required agents to obtain permission before generating a multi-transaction CPL. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would be left blank.

13

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

### 3. Fidelity National Title Insurance Company

Prior to the implementation of AgentTrax, Fidelity issued CPLs through a website located at the url neticsl.com. Prior to the implementation of the web-based system, Fidelity generated CPLs manually upon receiving a request from an agent. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address.

Sample multi-transaction CPLs have been produced and Bates-labeled FIDELITY-AQ0002036-41. A form multi-transaction CPL generated using the Pre-AgentTrax web-based system has been produced and Bates-labeled FIDELITY-AQ0002035.

### 4. Lawyers Title Insurance Company and Transnation Title Insurance Company

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about Lawyer Title/Transnation's policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

### 5. Ticor Title Insurance Company

Prior to the implementation of AgentTrax, agents generated their own CPLs through a web-based system. As a matter of practice, agents called Chicago Title to obtain permission to generate a multi-transaction CPL. Prior to the implementation of the web-based system, Chicago Title generated CPLs manually upon receiving a request from an agent. The substance of the

transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would be left blank.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs or any data from the Pre-AgentTrax web-based system.

## RHODE ISLAND

### 1. Commonwealth Land Title Insurance Company

Prior to the implementation of AgentTrax, agents generated their own CPLs through LandAmerica's website, which used the AgentXtranet system. Prior to the implementation of AgentXtranet, Commonwealth generated CPLs manually upon receiving a request from an agent. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address.

Data from the AgentXtranet system has been produced and Bates-labeled FIDELITY-AQ0001762-70, 1779-90, and 1793-1823.

### 2. Fidelity National Title Insurance Company

Prior to the implementation of AgentTrax, Fidelity generated CPLs manually upon receiving a request from an agent. Fidelity issued multi-transaction CPLs solely to permit an agent to get on a lender's list of approved agents. Thus, the multi-transaction CPL could only be used for transactions closed by the particular agent for the particular lender specified on the CPL. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address, but instead contained the terms "All Closings."

A sample multi-transaction CPL has been produced and Bates-labeled FIDELITY-AQ0002042.

### 3. Ticor Title Insurance Company

Prior to the implementation of AgentTrax, Ticor generated CPLs manually upon receiving a request from an agent. Some agents generated their own CPLs from a template using third-party software called SoftPro. Ticor issued blanket CPLs solely to permit an agent to get on a lender's list of approved agents. The purpose of such a blanket CPL was to demonstrate to the lender that the agent had an established relationship with Ticor. The substance of the transaction-specific and blanket CPLs was identical. The blanket CPL, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, the re: line would be left blank. At times, however, the individual generating the CPL may have inserted the terms "Sample, or "Specimen" in the re: line to indicate that it was a multi-transaction CPL.

The Fidelity Third-Party Defendants have been unable to locate any sample blanket CPLs.

### 4. Transnation Title Insurance Company

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about Lawyer Title/Transnation's policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

Respectfully submitted,

Chicago Title Insurance Company, Commonwealth Land Title Insurance Company, Fidelity National Title Insurance Company, Lawyers Title Insurance Company, Ticor Title Insurance Company, American Pioneer Title Insurance Company, and Transnation Title Insurance Company.

By: _____
One of Their Attorneys

Albert E. Fowerbaugh, Jr.
Andrew D. Shapiro
Sandra J. Durkin
Butler Rubin Saltarelli & Boyd
70 West Madison Street, Ste. 1800
Chicago, Il 60602
Phone: (312) 444-9660
Fax: (312) 444-9287

## CERTIFICATE OF SERVICE

The undersigned on oath states that he served the foregoing on:

    Randall L. Manvitz
    Buchalter Nemer, P.C.
    55 Second Street, Ste. 1700
    San Francisco, California 94105

    Joanne Davies, Esq.
    BuchalterNemer, P.C.
    18400 Von Karman Avenue, Suite 800
    Irvine, California 92612-0514

by mailing same in a properly addressed envelope, postage prepaid, and by depositing same in the U.S. mail and by electronic mail on the 10th day of March, 2014.

                                              Andrew D. Shapiro

513593

## VERIFICATION

I, Claudia Stringfield Johnson, declare under penalty of perjury under the United States of America as more specifically provided by 28 U.S.C. § 1746, that I have read the Fidelity Third-Party Defendants Answers to Ameriquest Mortgage Company's Interrogatories (Set One); that I sign the foregoing Answers to Ameriquest's Interrogatories (Set One) on behalf of the Fidelity Third-Party Defendants and am duly authorized to do so; that the matters stated in the foregoing document are not within my personal knowledge; that the facts stated in the foregoing document have been assembled by authorized employees and counsel of the Fidelity Third-Party Defendants; and that I am informed that those authorized employees believe that the facts stated in the foregoing document are true and correct to the best of their knowledge, information and belief.

Dated: March 10, 2014