**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| | (Centralized before The Honorable Marvin E. Aspen) |
| | Assigned to Magistrate Judge Daniel G. Martin |

**AMERIQUEST'S MOTION TO COMPEL FIDELITY TO APPEAR FOR 30(B)(6) DEPOSITION CONCERNING SPOLIATION OF CLOSING PROTECTION LETTERS**

**I.      INTRODUCTION**

For years, the Fidelity Third-Party Defendants have put up obstacle after obstacle to avoid producing the indemnity agreements, also known as closing protection letters, at issue in the third-party claims. Now that Fidelity has run out of arguments to avoid producing the closing protection letters, it recently disclosed that they have been lost or destroyed. Immediately after disclosing the apparent spoliation, Fidelity argued to the Court that discovery should be terminated.

Discovery into the Fidelity's spoliation, records retention policies, and back-up procedures is highly relevant and warranted. Ameriquest has attempted to get Fidelity to agree to a 30(b)(6) deposition on these topics but Fidelity will not state whether they will voluntarily produce a witness or responsive documents to the deposition notice. Ameriquest repeatedly attempted to convince Fidelity to resolve any disputes about the notice sufficiently in advance of the status hearing on May 29, 2014 so that any unresolved objections could be briefed before this Court. Fidelity's counsel will not pick up the phone to confer about any issues it may have in advance of the status conference. Fidelity remains silent about whether it will appear for deposition and is trying once again to delay discovery about its closing protection letters.

1

Any objections should be overruled, and Fidelity should be ordered to produce the requested documents and appear for deposition by a date certain.

II.     **FACTUAL BACKGROUND**

      A.     **Fidelity Recently Responded To Discovery Pending Since Summer 2012 Disclosing Spoliation Of All Core Documents**

As the Court previously ruled, one of the central issues for discovery in the MDL is Fidelity's closing protection letter practices and the interpretation of the closing protection letters. *See* Order, *Terry v. Ameriquest*, 08CV02475 ("*Terry*"), *Terry* Dkt. 782; Order, MDL Dkt. 5346 at 3, 9. The closing protection letters are indemnity agreements that Fidelity issued to indemnify Third-Party Plaintiffs for losses arising from the loan closings by Fidelity's title company agents. *Terry*, Dkt. 731. Third-Party Plaintiffs contend that Fidelity issued blanket closing protection letters meaning that one letter applied to future transactions instead of a single transaction. Fidelity has typically argued that its letters only cover a single transaction but Fidelity's position has repeatedly been shown to be unsupported. *See Terry* Dkt. 731, 737, 771, MDL Dkt. 4389. Discovery into Fidelity's closing protection letter practices has long been at issue.

In 2009, this Court ordered the parties involved in the third-party claims to exchange any contracts at issue in their possession. MDL Dkt. 3268. Also in 2009, Ameriquest subpoenaed Fidelity's data memorializing the blanket closing protection letters that had been issued. In August 2012, Ameriquest propounded its first set of interrogatories and requests for production in the MDL in August 2012 seeking that information.

The closing protection letters were typically generated via Fidelity websites which allowed Fidelity, through its title agents, to complete the form letter with addressee information and sometimes a regarding line. The purpose of the closing protection letter websites was to memorialize closing protection letters that had been issued and allow them to be re-printed if lost or needed to be reproduced. Each closing protection letter that had been issued during the history of the website was maintained as data on a spreadsheet showing the date of issuance and

any language added to the form letter such as the addressee ("Closing Protection Letter Database Spreadsheet"). *See* Dkt. 5465-1 (sample spreadsheet from Ticor-Illinois), previously attached at MDL Dkt. 4389-8. Recreating a closing protection letter should be as simple as reviewing the Closing Protection Letter Database Spreadsheet and the form of closing protection letter used so the initial discovery has focused on obtaining those two foundational types of documents. Fidelity has fought for seven years to try to hide this basic information and only now reports it has been destroyed or lost.

Fidelity has avoided discovery into its closing protection letter practices for years by asserting objection after objection to avoid discovery. First Fidelity filed two motions for protective order. *See Terry* Dkts. 572, 586, 2/4/10 and 2/19/10 (Fidelity and Ticor motions for protective order re: data of closing protections that had been issued). Then Fidelity claimed discovery was stayed in *Terry* because of the MDL and filed another motion for protective order and objected to other discovery requiring a motion to compel. *See Terry* Dkts. 718, 731, 759, 6/27/2011 to 3/8/2012 (Fidelity motion for protective order re: closing protection letters because discovery was purportedly stayed and Ameriquest's motion to compel and Judge Chang order). Then another motion to compel was required to force Fidelity to participate in discovery. *See Terry* Dkts. 771, 774, 781, 6/27/2012 to 7/19/2012 (Ameriquest's motion to compel, Fidelity's opposition, Judge Chang's order).

In *Terry*, Ameriquest obtained for one Fidelity entity (Ticor) and one state (Illinois): (1) the form closing protection letters, and (2) the Closing Protection Letter Database Spreadsheet memorializing how each closing protection letter had been issued from approximately 2003 to 2006. *See e.g.* Dkt. 5465- 1 (spreadsheet of data from Ticor-Illinois)*; see e.g.,* MDL Dkt. 4389-7 (Ticor-Illinois closing protection letter form). These documents have repeatedly been before the Court to show the Court the nature of the common dispute over the interpretation of the closing protection letters and the roadmap for the same discovery in the MDL on a much broader scale. *See* MDL Dkt. 4389-8.

3

In the MDL, there are 28 Fidelity subsidiary and state combinations other than the Ticor-Illinois documents obtained in *Terry* so the same core discovery was sought again in the MDL. Fidelity objected that discovery was stayed and refused to substantively respond. MDL Dkts. 5082, 9/17/12 (Ameriquest's motion to overrule Fidelity's objection that discovery stayed). Judge Denlow orally ruled that the parties should raise the issue with Judge Aspen to determine the scope of discovery in the MDL. MDL Dkt. No. 5123-7, 9/20/12, Tr. of Hrg. at 17–18. Four days later, Fidelity tried to avoid having the matter being decided by Judge Aspen by preemptively filing a motion to disband the MDL, claiming that the Court did not have jurisdiction over Third-Party Defendant issues. MDL Dkt. 5101, 9/24/12 (Fidelity motion). The Court overruled Fidelity's "motion to disband the consolidated third-party action" and ruled that the common issues presented by Ameriquest's first set of interrogatories and requests for production – closing protection letters - should proceed in the MDL. 9/3/13 Order, MDL Dkt. 5346 at p. 3, 9.

Now, Fidelity has tried a different tactic to avoid participating in discovery about its closing protection letter practices and producing the Closing Protection Letter Database Spreadsheets and form closing protection letters which will establish that blanket closing protection letters were issued to Ameriquest. Fidelity tried to run out the clock by delaying providing its substantive responses to Ameriquest's first set of discovery pending since August 2012 until mid-March 2014. Since the Court's denial of the motion to disband the third-party consolidated action in September 2013, Fidelity's counsel repeatedly explained that they were working diligently on collecting (1) the spreadsheets of closing protection letter data which memorialize the closing protection letters that had been issued, (2) exemplar closing protection letters for each brand and state at issue, and (3) information on the process for issuance of the letters, typically a web-site specifically for completing the form letters and memorializing their issuance to allow them to be reprinted in the future.

Third-Party Plaintiffs patiently waited because Fidelity's counsel repeatedly stated they needed more time because of the breadth of information at issue. Finally, on March 10, 2014,

Fidelity revealed that it is "**unable to locate**" its Closing Protection Letter Database Spreadsheets for essentially all of the 28 of 29 Fidelity company and state combinations and also are unable to locate a single example of a closing protection letter for most states and brands although they were utilized for practically every loan closing for years. Dkt. 5465- 2 (Response to Ameriquest Interrogatory Set One, No. 2.)

  While Fidelity has been fighting tooth and nail to avoid discovery into closing protection letters in *Terry* and the MDL, the documents were apparently being destroyed. This has serious implications for this litigation and will require a significant amount of follow-up discovery concerning spoliation.

### B. Fidelity Refuses To Explain What Happened To The Closing Protection Letters

  Ameriquest repeatedly asked Fidelity to explain what happened to the closing protection letters. Fidelity refuses to explain. Although Fidelity has obviously known about the status of the lost or destroyed closing protection letters for some time, Fidelity refuses to respond by email or simply pick up the to discuss it. Maybe Fidelity will explain it to the Court.

### C. 30(b)(6) Deposition Notice For May 19, 2014

  On April 24, 2014, Fidelity was asked to cooperate in scheduling a Fidelity 30(b)(6) witness concerning what happened to the data and why it has not been located, any search for the closing protection letter data, the document retention policy and retention efforts, back-up systems, and the same topics for closing protection letters. To date, Fidelity will not state whether they will voluntarily appear for a deposition on those topics.

  Ameriquest's counsel followed up in person with Fidelity's counsel on May 1 and was told that they would respond later. The only response was asking for a formal 30(b)(6) deposition notice which was served on May 8, 2014. Ex. 1. Ameriquest's counsel repeatedly tried to convince Fidelity's counsel to state whether they would be objecting so the parties could resolve any issues in advance of the May 29 Status Conference when the parties were already scheduled to appear before Judge Martin. Exs. 2-7.

Ameriquest tried to convince Fidelity's counsel to simply discuss by May 12 whether Fidelity would voluntarily produce a witness per the April 24 request. Fidelity declined to discuss it. Ameriquest reiterated, repeatedly, that any objections needed to be addressed sufficiently in advance of the May 29 Status Conference to allow the Court to resolve any disputes at that time. Ameriquest explained, repeatedly, that if Fidelity would not agree to address its objections on May 20 so that any issues could be briefed by May 22, it would take that as confirmation that Fidelity was would not agree to produce a witness on the topics outstanding since April 24 and would move to compel on May 22. Fidelity declined to discuss its objections on a timely basis, never agreed to a date to meet and confer, and said it would only provide its objections on a date too late for the parties to brief any issues before the May 29 conference.

There is a long history of Fidelity delaying responding to discovery and then merely objecting, claiming to need weeks to meet and confer, and then delaying the briefing process. Fidelity's refusal to simply identify any objections to the 30(b)(6) notice shows that it will continue to stall, and Court intervention is necessary. To this day, Fidelity has never indicated it will produce a witness in response to the topics identified in my April 24 email and subsequent status report. Dkt. 5465.

Pursuant to Local Rule 37.2, Ameriquest states that it has attempted to meet and confer but its efforts were unsuccessful due to no fault of counsel's. Ameriquest remains willing to meet and confer about Fidelity's objections and if the parties are able to resolve any objections in advance of the May 29 hearing, the Court will be promptly informed.

## III.    **CONCLUSION**

For the aforementioned reasons, Ameriquest's motion to compel should be granted. Fidelity should be ordered to: (1) produce all responsive documents by June 13; and (2) present a witness who is appropriately prepared to testify about the 30(b)(6) topics at a mutually convenient date and location by July 3 or at later time if agreeable to Ameriquest.

DATED: May 22, 2014

Respectfully submitted,

By: /s/ Randall L. Manvitz
*Attorneys for Third-Party Plaintiffs*

Randall Manvitz, Esq. (admitted *pro hac vice*)
Joanne N. Davies (admitted *pro hac vice*)
BUCHALTER NEMER,
A Professional Corporation
333 Market Street, 25th Floor
San Francisco, CA 94105
Telephone: (415) 227-0900
Facsimile: (415) 227-0770

7

**CERTIFICATE OF SERVICE**

I, Randall L. Manvitz, hereby certify that on this 22nd day of May 2014, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: _____/s/ Randall L. Manvitz_____