# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) ) ) ) ) ) ) |

MDL No. 1715

Lead Case No. 05-cv-07097

(Centralized before the Honorable Marvin E. Aspen)

**FIDELITY THIRD-PARTY DEFENDANTS'**
**FOURTH AMENDED OBJECTIONS AND ANSWERS TO AMERIQUEST'S**
**INTERROGATORIES (SET ONE) PROPOUNDED ON FIDELITY ENTITIES**

Third-Party Defendants Chicago Title Insurance Company, Commonwealth Land Title Insurance Company, Fidelity National Title Insurance Company, Lawyers Title Insurance Company, Ticor Title Insurance Company, American Pioneer Title Insurance Company, and Transnation Title Insurance Company (collectively the "Fidelity Third-Party Defendants"), by and through their undersigned counsel of record, hereby supplement their Responses to Third-Party Plaintiff Ameriquest Mortgage Company's ("AMC") Interrogatories (Set One) Propounded on Fidelity Entities as follows:

**GENERAL OBJECTIONS**

1.      The Fidelity Third-Party Defendants object to AMC's interrogatories to the extent they purport to impose obligations upon the Fidelity Third-Party Defendants that are inconsistent with or greater than the duties imposed by the Federal Rules of Civil Procedure.

2.      The Fidelity Third-Party Defendants object to AMC's interrogatories to the extent they seek information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege.  Such information will not be provided.  In the event that any such information is disclosed, such disclosure is inadvertent and does not constitute a waiver of

privilege. In responding to the interrogatories, the Fidelity Third-Party Defendants do not waive, but expressly preserve, all such privileges.

3.      The Fidelity Third-Party Defendants object to AMC's interrogatories to the extent they seek information that is outside the Fidelity Third-Party Defendants' possession, custody, or control.

4.      The Fidelity Third-Party Defendants object to AMC's interrogatories in their entirety insofar as they purport to require the Fidelity Third-Party Defendants to obtain and review electronically-stored information that is not reasonably accessible.

5.      The Fidelity Third-Party Defendants' responses to AMC's interrogatories are based on information currently available, at this stage of the litigation. The Fidelity Third-Party Defendants' investigation and discovery in this matter is ongoing. Further information and examination may disclose additional information related to AMC's interrogatories. As such, the Fidelity Third-Party Defendants' responses are provided without prejudice to their right to supplement these responses and provide additional information, or object to the production of further information, subsequently discovered.

6.      The Fidelity Third-Party Defendants object to the definition of "Chart" to the extent that the "Chart" includes combinations of states and Fidelity Third-Party Defendants that are no longer at issue in the claims asserted against the Fidelity Third-Party Defendants. To the extent that the "Chart" seeks information not involving any of the cases included in the October 22, 2012 list of opt-out cases, provided to the Fidelity Third-Party Defendants by AMC's counsel, under which AMC continues to pursue third-party claims against the Fidelity Third-Party Defendants (the "October 2012 list"), the Fidelity Third-Party Defendants object to any

2

such interrogatory on the grounds it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

7.      To the extent that the Fidelity Third-Party Defendants reference prior discovery requests served upon them in either this proceeding or in the *Terry v. Ameriquest Mortgage Company* lawsuit (the "*Terry* lawsuit"), the Fidelity Third-Party Defendants incorporate herein by reference the objections, responses, and any judicial rulings regarding those prior discovery requests.

8.      These General Objections are incorporated by reference into each of the Fidelity Third-Party Defendants' specific responses below.

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1:

Identify by Bates number(s) Documents reflecting each form of Blanket Closing Protection Letter used by Third-Party Defendants for each of the corresponding states marked with an "X" on the Chart.

**ANSWER:**  Subject to and without waving any of the General Objections stated above, the Fidelity Third-Party Defendants state that the answer to this interrogatory can be found in exhibits to the Alex Ricks and Donald Cole depositions, taken in the *Terry v. Ameriquest Mortgage Company* lawsuit.

Further answering, the Fidelity Third-Party Defendants refer AMC to their response to Interrogatory No. 2 below.

### INTERROGATORY NO. 2:

Describe how Blanket Closing Protection Letters were issued by Third-Party Defendants for each of the corresponding states marked with an "X" on the Chart including, but not limited to, the process for completing the letters such as whether blanks in the regarding line or other particular language were used to indicate that a closing protection letter is

blanket, any characteristics that would distinguish it from a transaction-specific letter, any approval process, and any website for generation of the letter.

**ANSWER:** Subject to and without waving any of the General Objections stated above, the Fidelity Third-Party Defendants state that the answer to this interrogatory as it relates to blanket closing protection letters created out of the AgenTrax system can be found in the transcript of, and exhibits to, the deposition of Alex Ricks and Donald Cole, taken in the *Terry v. Ameriquest Mortgage Company* lawsuit. The Fidelity Third-Party Defendants further state that the answer to this interrogatory as it relates to Ticor Title Insurance Company in Illinois can be found in the transcript of, and exhibits to, the deposition of David Scott, also taken in the *Terry* action. The Fidelity Third-Party Defendants further state that the answers to this Interrogatory as it relates to Chicago Title Insurance Company in Alabama, and Fidelity National Title Insurance Company in Connecticut, can be found in the transcript of, and exhibits to, the deposition of Alex Ricks and Donald Cole, taken in the *Terry v. Ameriquest Mortgage Company* lawsuit.

Further answering, the Fidelity Third-Party Defendants state the following:

**ALABAMA**

**1.      Chicago Title Insurance Company**

Prior to the implementation of AgentTrax, agents generated their own closing protection letters ("CPLs") through Chicago Title's local agency website, which was located at the url alma.ctic.com. Prior to the implementation of the web-based system, Chicago Title generated CPLs manually upon receiving a request from an agent. Chicago Title did not create manual or electronic logs identifying manually-issued CPLs. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would be left blank or removed from the CPL. In some

4

instances, the lender would require that certain specific language be included in a multi-transaction CPL, like the insertion of the terms "All Closings" or "All Closings in 2004." Chicago Title would follow those lenders' instructions. Accordingly, one would need to look at the lender's instructions to determine whether a blank re: line was intended to create a multi-transaction CPL rather than simply an instance in which the agent mistakenly failed to include transaction-specific information.

Samples of multi-transaction CPLs have been produced and Bates-labeled TICOR0001953-63. The Fidelity Third-Party Defendants have been unable to locate any data from the local agency website.

Further answering, the Fidelity Third-Party Defendants state that the data from the local agency website was stored on a server hosted externally by Info Smart Inc., a third-party IT company. At some point between 2000 and 2005, Chicago Title stopped using the local agency website and the server storing the underlying data. At that time, Info Smart returned the server to Chicago Title. Chicago Title stored the unused server in a room with other equipment, including another server which was actually in operation. In approximately 2005, a fire marshal advised Chicago Title employees that the equipment was not properly stored in that location. In accordance with the fire marshal's instructions, Chicago Title IT employee Rachel Affleck cleaned all of the equipment out of the room. Affleck moved some of this equipment, including the operable server, into the only available space in the office – a small storage closet. In 2005, years before any Fidelity entity was put on notice regarding this litigation, Affleck turned over the equipment that had been out of use for several years, including the server in question, to Redemtech, an IT asset disposition company now known as Arrow Value Recovery. At most, the data on this server related to only one loan at issue in this proceeding. Affleck was unaware

5

that the server contained CPL data from the local agency website. To the best of the Fidelity Third-Party Defendants knowledge, Redemtech did not preserve any of the data before recycling the server.

The data on this server was stored on a single back-up tape created by Info Smart. Info Smart returned this back-up tape to Chicago Title when it returned the server. Chicago Title turned this back-up tape over to Redemtech at the same time that it transferred the server. It is Chicago Title's practice to turn over back-up tapes for secure destruction when it transfers old equipment.

The local Chicago Title office was responsible for maintaining data generated by its office. Document retention policies and schedules have been produced and Bates-labeled FIDELITY-AQ0002066-2141.

### 2. Fidelity National Title Insurance Company

Prior to the implementation of AgentTrax, Fidelity issued CPLs through a website located at the url neticsl.com. Some agents used the web-based system to generate their own CPLs while other agents requested that Fidelity generate the CPLs and then transmit them to the agent. When Fidelity was asked to generate CPLs for its agents, Fidelity used the same web-based system that was used by the agents. Prior to the implementation of the web-based system, Fidelity always manually generated CPLs upon receiving a request from an agent. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would be left blank.

The forms of closing protection letters used by Fidelity during this time, along with the data from the neticsl web system for CPLs issued in connection with closings in the states at issue has been produced and Bates-labeled FIDELITY-AQ0002150.

3. **Commonwealth Land Title Insurance Company and Lawyers Title Insurance Company**

Prior to the implementation of AgentTrax, agents generated their own CPLs through LandAmerica's website, which used the AgentExtra system. Prior to the implementation of AgentExtra, Commonwealth Land Title and Lawyers Title ("Commonwealth/Lawyers") generated CPLs manually upon receiving a request from an agent. Commonwealth/Lawyers did not create manual or electronic logs identifying manually-issued CPLs. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address.

A form multi-transaction CPL has been produced and Bates-labeled FIDELITY-AQ0001986-87. Data from the AgentExtra system has been produced and Bates-labeled FIDELITY-AQ0001762-70, 1779-90, and 1793-1823.

4. **Ticor Title Insurance Company**

From April 2004 to the implementation of AgentTrax, Ticor generated CPLs manually upon receiving a request from an agent. Ticor did not create manual or electronic logs identifying manually-issued CPLs. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address.

From 2001-2004, Ticor operated out of the same office as Chicago Title. For much of this period, agents generated their own CPLs through Chicago Title's local agency website,

7

which was located at the url alma.ctic.com. Prior to the implementation of the web-based system, Ticor generated CPLs manually upon receiving a request from an agent. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would be left blank.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs or any data from the Pre-AgentTrax web-based system.

Further answering, the Fidelity Third-Party Defendants refer AMC to their response to this Interrogatory with respect to Chicago Title in Alabama above.

## CONNECTICUT

### 1. American Pioneer Title Insurance Company

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about American Pioneer's policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

Further answering, the Fidelity Third-Party Defendants state that, to the best of their knowledge, there is nobody still employed at the Company with knowledge about American Pioneer's policies or practices in Connecticut during the relevant period with respect to multi-transaction CPLs or about whether any data regarding CPLs ever existed.

### 2. Chicago Title Insurance Company

Prior to the implementation of AgentTrax, Chicago Title issued CPLs through a website located at the url cticct.com. Some agents used the web-based system to generate their own

8

CPLs while other agents requested that Chicago Title generate the CPLs and then transmit them to the agent. When Chicago Title was asked to generate CPLs for its agents, it generated them manually. Prior to the implementation of the web-based system, Chicago Title always manually generated CPLs upon receiving a request from an agent. Chicago Title did not create manual or electronic logs identifying manually-issued CPLs. Chicago Title only issued a blanket CPL when an agent required one to get on a lender's list of approved agents. The purpose of such a blanket CPL was to demonstrate to the lender that the agent had an established relationship with Chicago Title. The substance of the transaction-specific and blanket CPLs was identical. The blanket CPLs, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a blanket CPL, the re: line would be left blank or completely whited out. Generally, however, the individual generating the CPL may have inserted the terms "All Transactions," "All Closings," "Specimen," or "Blanket Closing Protection Letter" on the CPL to indicate that it was a blanket CPL.

Sample blanket CPLs generated using the Pre-AgentTrax web-based system have been produced and Bates-labeled FIDELITY-AQ0001994-97. The Fidelity Third-Party Defendants have been unable to locate any sample blanket CPLs generated manually.

Further answering, the Fidelity Third-Party Defendants state that data from cticct.com does not reflect any multi-transaction CPLs issued to Ameriquest, Argent, or Town and Country on behalf of any of the relevant agents who closed loans for those brands in those states.

### 3.    Commonwealth Land Title Insurance Company and Lawyers Title Insurance Company

Prior to the implementation AgentTrax, Commonwealth/Lawyers generated CPLs manually upon receiving a request from an agent. Commonwealth/Lawyers did not create manual or electronic logs identifying manually-issued CPLs. Agents were also able to generate

their own CPLs using computer software and pre-signed Word templates provided by Commonwealth/Lawyers. Agents only requested multi-transaction CPLs to get on a lender's list of approved closing attorneys. The purpose of such a multi-transaction CPL was to demonstrate to the lender that the agent had an established relationship with Commonwealth/Lawyers. Thus, the multi-transaction CPL could only be used for transactions closed by the particular agent for the particular lender specified on the CPL. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would be left blank or removed from the CPL.

Form multi-transaction CPLs have been produced and Bates-labeled FIDELITY-AQ0001988-91. A sample multi-transaction CPL has been produced and Bates-labeled FIDELITY-AQ0001992-93.

Further answering, the Fidelity Third-Party Defendants state that, prior to the implementation of AgentTrax, agents were also able to generate their CPLs through LandAmerica's website, which used the AgentExtra system. Data from the AgentExtra system has been produced and Bates-labeled FIDELITY-AQ0001762-70, 1779-90, and 1793-1823.

### 4. Fidelity National Title Insurance Company

Prior to the implementation of AgentTrax, Fidelity generated CPLs manually upon receiving a request from an agent. Fidelity did not create manual or electronic logs identifying manually-issued CPLs. Some agents generated their own CPLs using templates from third-party software called Display Soft. Fidelity issued blanket CPLs solely to permit an agent to get on a lender's list of approved agents. The purpose of such a blanket CPL was to demonstrate to the lender that the agent had an established relationship with Fidelity. The substance of the

transaction-specific and blanket CPLs was identical. The blanket CPLs, however, did not contain any transaction-specific information, such as a borrower name or address, but instead contained the terms "All Closings," "All Connecticut Closings," or "Blanket" in the re: line or the "Client" line. Fidelity's practice was to not leave the re: line blank on a blanket CPL.

Sample blanket CPLs have been produced and Bates-labeled FIDELITY-AQ0001998-2009.

**5.      Ticor Title Insurance Company**

Prior to the implementation of AgentTrax, Ticor generated CPLs manually upon receiving a request from an agent. Ticor did not create manual or electronic logs identifying manually-issued CPLs. Some agents generated their own CPLs from a template using third-party software called SoftPro. Ticor issued blanket CPLs solely to permit an agent to get on a lender's list of approved agents. The purpose of such a blanket CPL was to demonstrate to the lender that the agent had an established relationship with Ticor. The substance of the transaction-specific and blanket CPLs was identical. The blanket CPL, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, the re: line would be left blank. At times, however, the individual generating the CPL may have inserted the terms "Sample, or "Specimen" in the re: line to indicate that it was a multi-transaction CPL. The Fidelity Third-Party Defendants have been unable to locate any sample blanket CPLs.

**ILLINOIS**

**1.      American Pioneer Insurance Company**

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about American Pioneer's policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

Further answering, the Fidelity Third-Party Defendants state that, to the best of their knowledge, there is nobody still employed at the Company with knowledge about American Pioneer's policies or practices in Illinois during the relevant period with respect to multi-transaction CPLs or about whether any data regarding CPLs ever existed.

### 2.  Chicago Title Insurance Company

Prior to the implementation of AgentTrax, Chicago Title generated CPLs manually upon receiving a request from a lender using an in-house proprietary system called TEAM.  Chicago Title did not create manual or electronic logs identifying manually-issued CPLs.  Chicago Title issued CPLs on a per-transaction basis as required by lenders, and did not issue multi-transaction CPLs.

### 3.  Commonwealth Land Title Insurance Company and Lawyers Title Insurance Company

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about Commonwealth/Lawyers' policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

Further answering, the Fidelity Third-Party Defendants state that, prior to the implementation of AgentTrax, agents were also able to generate their CPLs through LandAmerica's website, which used the AgentExtra system.  Data from the AgentExtra system has been produced and Bates-labeled FIDELITY-AQ0001762-70, 1779-90, and 1793-1823.

12

### 4. Fidelity National Title Insurance Company

Prior to the implementation of AgentTrax, agents generated their own CPLs through a web-based system. Prior to the implementation of the web-based system, Fidelity generated CPLs manually upon receiving a request from an agent. Fidelity did not create manual or electronic logs identifying manually-issued CPLs. The substance of the transaction-specific and multi-transaction CPLs was identical. Neither single- nor multi-transaction CPLs were required to contain any transaction-specific information.

Sample multi-transaction CPLs have been produced and Bates-labeled FIDELITY-AQ0002010-13. Further answering, the Fidelity Third-Party Defendants state that data from the neticsl web system has been produced and Bates-labeled FIDELITY-AQ0002150.

### 5. Ticor Title Insurance Company

The answer to this interrogatory as it relates to Ticor Title Insurance Company in Illinois can be found in the transcript of, and exhibits to, the deposition of David Scott, taken in the *Terry* action.

## MASSACHUSETTS

### 1. American Pioneer Insurance Company

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about American Pioneer's policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

Further answering, the Fidelity Third-Party Defendants state that, to the best of their knowledge, there is nobody still employed at the Company with knowledge about American

13

Pioneer's policies or practices in Massachusetts during the relevant period with respect to multi-transaction CPLs or about whether any data regarding CPLs ever existed.

2. **Chicago Title Insurance Company/Ticor Title Insurance Company**

Prior to the implementation of AgentTrax, Chicago Title and Ticor Title issued CPLs through a website located at the url www.cticticorne.com. Chicago Title and Ticor Title may also have issued CPLs manually during this period. Chicago Title and Ticor did not create manual or electronic logs identifying manually-issued CPLs. Prior to the implementation of the web-based system, Chicago Title and Ticor Title generated CPLs manually upon receiving a request from an agent. The substance of the transaction-specific and multi-transaction CPLs was similar. To the best of the Fidelity Third-Party Defendants' knowledge and belief, the multi-transaction CPLs did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would generally be left blank or would contain an agent name or other non-transaction-specific language.

A form multi-transaction CPL has been produced and Bates-labeled FIDELITY-AQ0002017-19. Sample multi-transaction CPLs have been produced and Bates-labeled FIDELITY-AQ0002020-29, 33-34, and 43-44.

Further answering, the Fidelity Third-Party Defendants state that CPLs from the pre-AgenTrax website that do not reference a specific transaction and that reference a closing agent involved in the loans at issue in these proceedings have been produced and Bates-labeled FIDELITY-AQ0002142-49.

3. **Commonwealth Land Title Insurance Company and Lawyers Title Insurance Company**

Prior to the implementation of AgentTrax, agents generated their own CPLs through LandAmerica's website, which used the AgentXtranet system. Prior to the implementation of

14

AgentXtranet, Commonwealth/Lawyers generated CPLs manually upon receiving a request from an agent. Commonwealth/Lawyers did not create manual or electronic logs identifying manually-issued CPLs. The Fidelity Third-Party Defendants were unable to obtain any information about Commonwealth/Lawyers Title's policies or practices during the relevant period with respect to multi-transaction CPLs.

Form multi-transaction CPLs have been produced and Bates-labeled FIDELITY-AQ0002014-16. Data from the AgentXtranet system has been produced and Bates-labeled FIDELITY-AQ0001762-70, 1779-90, and 1793-1823.

### 4.     Fidelity National Title Insurance Company

Prior to the implementation of AgentTrax, Fidelity generated CPLs manually upon receiving a request from an agent. Fidelity did not create manual or electronic logs identifying manually-issued CPLs. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would contain an agent name instead of transaction-specific information.

Sample multi-transaction CPLs have been produced and Bates-labeled FIDELITY-AQ0002030-32.

### 5.     Transnation Title Insurance Company

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about Transnation's policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

Further answering, the Fidelity Third-Party Defendants state that, to the best of their knowledge, there is nobody still employed at the Company with knowledge about Transnation's policies or practices in Massachusetts during the relevant period with respect to multi-transaction CPLs or about whether any data regarding CPLs ever existed.

## MICHIGAN

### 1. American Pioneer Insurance Company

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about American Pioneer's policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

Further answering, the Fidelity Third-Party Defendants state that, to the best of their knowledge, there is nobody still employed at the Company with knowledge about American Pioneer's policies or practices in Michigan during the relevant period with respect to multi-transaction CPLs or about whether any data regarding CPLs ever existed.

### 2. Chicago Title Insurance Company

Prior to the implementation of AgentTrax, agents generated their own CPLs through a web-based system. As a matter of practice, agents called Chicago Title to obtain permission to generate a multi-transaction CPL. Prior to the implementation of the web-based system, Chicago Title generated CPLs manually upon receiving a request from an agent. Chicago Title did not create manual or electronic logs identifying manually-issued CPLs. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs,

16

however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would be left blank.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs. Further answering, the Fidelity Third-Party Defendants state that there is nobody still employed at the Company with knowledge about whether data underlying the pre-AgentTrax web-based system was ever created, stored, or maintained and, if so, its location or disposition. At most, any data from this system would have related to five loans at issue in this proceeding. The local Chicago Title office was responsible for maintaining data generated by its office. Document retention policies and schedules have been produced and Bates-labeled FIDELITY-AQ0002066-2141.

### 3. Fidelity National Title Insurance Company

Prior to the implementation of AgentTrax, Fidelity issued CPLs through a website located at the url neticsl.com. Prior to the implementation of the web-based system, Fidelity generated CPLs manually upon receiving a request from an agent. Fidelity did not create manual or electronic logs identifying manually-issued CPLs. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address.

Sample multi-transaction CPLs have been produced and Bates-labeled FIDELITY-AQ0002036-41. A form multi-transaction CPL generated using the Pre-AgentTrax web-based system has been produced and Bates-labeled FIDELITY-AQ0002035. Further answering, the Fidelity Third-Party Defendants state that data from the neticsl web system has been produced and Bates-labeled FIDELITY-AQ0002150.

4. **Lawyers Title Insurance Company and Transnation Title Insurance Company**

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about Lawyer Title's or Transnation's policies or practices during the relevant period with respect to multi-transaction CPLs.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

Further answering, the Fidelity Third-Party Defendants state with respect to Trasnation that, prior to the implementation of AgentTrax, agents were also able to generate their CPLs through LandAmerica's website, which used the AgentExtra system. Data from the AgentExtra system has been produced and Bates-labeled FIDELITY-AQ0001762-70, 1779-90, and 1793-1823.

Further answering, the Fidelity Third-Party Defendants state that, to the best of their knowledge, there is nobody still employed at the Company with knowledge about Laywers Title's policies or practices in Michigan during the relevant period with respect to multi-transaction CPLs or about whether any data regarding CPLs ever existed.

5. **Ticor Title Insurance Company**

Prior to the implementation of AgentTrax, agents generated their own CPLs through the same web-based system used by Chicago Title in Michigan. Prior to the implementation of the web-based system, Ticor generated CPLs manually upon receiving a request from an agent. Ticor did not create manual or electronic logs identifying manually-issued CPLs. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, when generating a multi-transaction CPL, the re: line would be

left blank. Ticor would follow lender instructions. Accordingly, one would need to look at the lender's instructions to determine whether a blank re: line was intended to create a multi-transaction CPL rather than simply an instance in which the agent mistakenly failed to include transaction-specific information.

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs or any data from the Pre-AgentTrax web-based system. Further answering, the Fidelity Third-Party Defendants refer AMC to their response to this Interrogatory with respect to Chicago Title in Michigan above.

## RHODE ISLAND

### 1. Commonwealth Land Title Insurance Company

Prior to the implementation of AgentTrax, agents generated their own CPLs through LandAmerica's website, which used the AgentXtranet system. Prior to the implementation of AgentXtranet, Commonwealth generated CPLs manually upon receiving a request from an agent. Commonwealth did not create manual or electronic logs identifying manually-issued CPLs. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address.

Data from the AgentXtranet system has been produced and Bates-labeled FIDELITY-AQ0001762-70, 1779-90, and 1793-1823.

### 2. Fidelity National Title Insurance Company

Prior to the implementation of AgentTrax, Fidelity generated CPLs manually upon receiving a request from an agent. Fidelity did not create manual or electronic logs identifying manually-issued CPLs. Fidelity issued multi-transaction CPLs solely to permit an agent to get

19

on a lender's list of approved agents. Thus, the multi-transaction CPL could only be used for transactions closed by the particular agent for the particular lender specified on the CPL. The substance of the transaction-specific and multi-transaction CPLs was identical. The multi-transaction CPLs, however, did not contain any transaction-specific information, such as a borrower name or address, but instead contained the terms "All Closings."

A sample multi-transaction CPL has been produced and Bates-labeled FIDELITY-AQ0002042.

### 3. Ticor Title Insurance Company

Prior to the implementation of AgentTrax, Ticor generated CPLs manually upon receiving a request from an agent. Ticor did not create manual or electronic logs identifying manually-issued CPLs. Some agents generated their own CPLs from a template using third-party software called SoftPro. Ticor issued blanket CPLs solely to permit an agent to get on a lender's list of approved agents. The purpose of such a blanket CPL was to demonstrate to the lender that the agent had an established relationship with Ticor. The substance of the transaction-specific and blanket CPLs was identical. The blanket CPL, however, did not contain any transaction-specific information, such as a borrower name or address. Thus, the re: line would be left blank. At times, however, the individual generating the CPL may have inserted the terms "Sample, or "Specimen" in the re: line to indicate that it was a multi-transaction CPL.

The Fidelity Third-Party Defendants have been unable to locate any sample blanket CPLs.

### 4. Transnation Title Insurance Company

After conducting a reasonably diligent investigation, the Fidelity Third-Party Defendants were unable to obtain any information about Lawyer Title/Transnation's policies or practices during the relevant period with respect to multi-transaction CPLs.

20

The Fidelity Third-Party Defendants have been unable to locate any sample multi-transaction CPLs.

Further answering, the Fidelity Third-Party Defendants state that, to the best of their knowledge, there is nobody still employed at the Company with knowledge about Transnation's policies or practices in Rhode Island during the relevant period with respect to multi-transaction CPLs or about whether any data regarding CPLs ever existed.

Respectfully submitted,

Chicago Title Insurance Company, Commonwealth Land Title Insurance Company, Fidelity National Title Insurance Company, Lawyers Title Insurance Company, Ticor Title Insurance Company, American Pioneer Title Insurance Company, and Transnation Title Insurance Company.

By: _____
     One of Their Attorneys

Albert E. Fowerbaugh, Jr.
Andrew D. Shapiro
Sandra J. Durkin
Butler Rubin Saltarelli & Boyd
70 West Madison Street, Ste. 1800
Chicago, Il 60602
Phone: (312) 444-9660
Fax: (312) 444-9287

## <u>CERTIFICATE OF SERVICE</u>

The undersigned on oath states that he served the foregoing on:

Randall L. Manvitz
Buchalter Nemer, P.C.
55 Second Street, Ste. 1700
San Francisco, California 94105

Joanne Davies, Esq.
BuchalterNemer, P.C.
18400 Von Karman Avenue, Suite 800
Irvine, California 92612-0514

by mailing same in a properly addressed envelope, postage prepaid, and by depositing same in the U.S. mail and by electronic mail on the 29th day of July, 2014.

Sandra J. Durkin

518114

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) ) ) ) ) ) ) ) | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before the Honorable Marvin E. Aspen) |

**FIDELITY THIRD-PARTY DEFENDANTS'
SUPPLEMENTAL RESPONSES TO AMERIQUEST'S INTERROGATORIES
(SET TWO) PROPOUNDED ON FIDELITY ENTITIES**

Third-Party Defendants Chicago Title Insurance Company, Commonwealth Land Title Insurance Company, Fidelity National Title Insurance Company, Lawyers Title Insurance Company, Ticor Title Insurance Company, American Pioneer Title Insurance Company, and Transnation Title Insurance Company (collectively the "Fidelity Third-Party Defendants"), by and through their undersigned counsel of record, hereby supplement their Responses to Third-Party Plaintiff Ameriquest Mortgage Company's ("AMC") Interrogatories (Set Two) Propounded on Fidelity Entities as follows:

**<u>GENERAL OBJECTIONS</u>**

1.     The Fidelity Third-Party Defendants object to AMC's interrogatories to the extent they purport to impose obligations upon the Fidelity Third-Party Defendants that are inconsistent with or greater than the duties imposed by the Federal Rules of Civil Procedure.

2.     The Fidelity Third-Party Defendants object to AMC's interrogatories to the extent they seek information protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege.  Such information will not be provided.  In the event that any such information is disclosed, such disclosure is inadvertent and does not constitute a waiver of

privilege. In responding to the interrogatories, the Fidelity Third-Party Defendants do not waive, but expressly preserve, all such privileges.

3.      The Fidelity Third-Party Defendants object to AMC's interrogatories to the extent they seek information that is outside the Fidelity Third-Party Defendants' possession, custody, or control.

4.      The Fidelity Third-Party Defendants object to AMC's interrogatories in their entirety insofar as they purport to require the Fidelity Third-Party Defendants to obtain and review electronically-stored information that is not reasonably accessible.

5.      The Fidelity Third-Party Defendants' responses to AMC's interrogatories are based on information currently available, at this stage of the litigation. The Fidelity Third-Party Defendants' investigation and discovery in this matter is ongoing. Further information and examination may disclose additional information related to AMC's interrogatories. As such, the Fidelity Third-Party Defendants' responses are provided without prejudice to their right to supplement these responses and provide additional information, or object to the production of further information, subsequently discovered.

6.      The Fidelity Third-Party Defendants object to the definition of "Chart" to the extent that the "Chart" includes combinations of states and Fidelity Third-Party Defendants that are no longer at issue in the claims asserted against the Fidelity Third-Party Defendants. To the extent that the "Chart" seeks information not involving any of the cases included in the October 22, 2012 list of opt-out cases, provided to the Fidelity Third-Party Defendants by AMC's counsel, under which AMC continues to pursue third-party claims against the Fidelity Third-Party Defendants (the "October 2012 list"), the Fidelity Third-Party Defendants object to any

2

such interrogatory on the grounds it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

7.     The Fidelity Third-Party Defendants object to AMC's interrogatories on the ground that they do not comply with Federal Rule of Civil Procedure 33(a)(1) limiting the number of interrogatories that a party may serve to twenty-five, including all discrete subparts.

8.     The Fidelity Third-Party Defendants object to AMC's interrogatories to the extent that they request the Fidelity Third-Party Defendants to state the facts supporting their contentions and/or to speculate as to their future contentions prior to the completion of discovery, as such discovery requests are premature.

9.     To the extent that the Fidelity Third-Party Defendants reference prior discovery requests served upon them in either this proceeding or in the *Terry v. Ameriquest Mortgage Company* lawsuit (the "*Terry* lawsuit"), the Fidelity Third-Party Defendants incorporate herein by reference the objections, responses, and any judicial rulings regarding those prior discovery requests.

10.    These General Objections are incorporated by reference into each of the Fidelity Third-Party Defendants' specific responses below.

## SPECIFIC RESPONSES AND OBJECTIONS

### INTERROGATORY NO. 1:

Identify any document showing that any Third-Party Defendant used a process or procedure for requiring approval of a blanket closing protection letter at any time after 2002.

**ANSWER:** In addition to the General Objections stated above, the Fidelity Third-Party Defendants object to this Interrogatory on the ground that it is duplicative of discovery sought in this action and in the *Terry* lawsuit, including but not limited to Interrogatory No. 2 to AMC's

3

First Set of Interrogatories served in this action, as well as Topic I(15) of the December 31, 2009

Subpoena To Testify At A Deposition, Interrogatory Nos. 1, 2, and 4 to AMC's Second Set of

Interrogatories, Document Request No. 15 to AMC's Fourth Set of Document Requests,

Document Request Nos. 3, 8, 9, 10, 11, 12, 16, 54, and 55 of the December 31, 2009 Subpoena

For Production of Documents, and Document Request No. 3, 8, 9, 10, 11, 12, 16, 54, and 55 of

the December 31, 2009 Subpoena To Testify At A Deposition, all served in the *Terry* lawsuit.

The Fidelity Third-Party Defendants further object to this Interrogatory on the grounds that it is

vague, overbroad, relates to states, years, and Fidelity Third-Party Defendants that are not at

issue in this action, is unduly burdensome, and is not reasonably calculated to lead to the

discovery of admissible evidence.

Further answering, the Fidelity Third-Party Defendants refer AMC to their response to

Interrogatory No. 2 of AMC's Interrogatories (Set One) propounded on Fidelity Entities.


**INTERROGATORY NO. 7:**

Identify all persons providing information for your response to Interrogatories Set
One, Set Two, or the chart marked as Ex. 1 at Don Cole's deposition (the chart of
blanket closing protection letter practices) and for each person, state the
information provided, current title, title and job description for the 2003 to 2006
time period, and last known contact information.

**ANSWER:**    In addition to the General Objections stated above, the Fidelity Third-Party

Defendants object to this Interrogatory to the extent that it seeks information that is protected

from disclosure by the attorney-client privilege, the work-product doctrine, or any other

applicable privilege or doctrine.  To the extent that this Interrogatory seeks non-privileged

information, the Fidelity Third-Party Defendants object to it on the ground that it is premature

because the Fidelity Third-Party Defendants' investigation is ongoing.

4

Further answering, the Fidelity Third-Party Defendants state that the following current Fidelity Third-Party Defendant employees or, in the case of Brian Wortman, former employee, provided information for the Fidelity Third-Party Defendants' response to Interrogatories Set One, Set Two, or the chart marked as Ex. 1 at Donald Cole's deposition with respect to the states and brands identified in parentheses:

Joe Powell (Alabama/Chicago Title);

Cass Tinsley (Alabama/Fidelity);

Kit Farley (Alabama/Fidelity and Michigan/Fidelity);

Clark Cain (Alabama/Commonwealth and Lawyers Title);

Shenita Baker (Alabama/Ticor Title);

Anna Batten (Alabama/Ticor Title);

Denise Zinnoli (Connecticut/Chicago Title);

Jane Sullivan (Connecticut/Chicago Title);

Lynda Masselle (Connecticut/Chicago Title);

Lisa Lugauskas (Connecticut/Commonwealth and Lawyers Title);

Kim Rymarzick (Connecticut/Commonwealth and Lawyers Title);

Sherry Hoven (Connecticut/Fidelity);

Ina Barnard (Connecticut/Fidelity);

Susan Maria (Connecticut/Fidelity);

Patricia Kunz (Connecticut/Ticor Title);

Marina Sadownick (Connecticut/Ticor Title and Rhode Island/Ticor Title);

Anna Crawford (Connecticut/Ticor Title)

David Franks (Illinois/Fidelity);

Paul Cozzi (Illinois/Fidelity);

Patrick Walsh (Massachusetts/Chicago Title and Ticor Title);

Deborah Fleming (Massachusetts/Chicago Title and Ticor Title);

Virginia Wynne (Massachusetts/Commonwealth and Lawyers Title);

Toni Mitchell (Massachusetts/Fidelity);

Richard Lauber (Michigan/Fidelity);

Sarah Sutton (Michigan/Fidelity);

Meredith Weingarden (Michigan/Chicago Title and Ticor Title);

Ethan Powsner (Michigan/Ticor Title);

Maria DaSilva (Rhode Island/Commonwealth); and

Shae Thibault (Rhode Island/Fidelity).

James Petropoulos (Georgia/Fidelity);

Brian Wortman (Georgia/Fidelity, Chicago Title, Ticor Title, Security Union);

Theodore Morris (Georgia/Fidelity, Chicago Title, Ticor Title, Security Union);

Mike Roper (Georgia/Chicago Title);

Timothy Boucher (New Hampshire/Chicago Title and Ticor Title);

Joe Powell (Alabama, Mississippi, Louisiana, and Arkansas/Chicago Title and Security Union);

Deborah McDonald (Ohio/Chicago Title);

Mike Wypasek (Ohio/Chicago Title);

Bill Liska (Connecticut/Fidelity);

William Walsh (Maine, New Hampshire, Vermont/Chicago Title and Ticor Title);

Jeff Hrdlicka (North Carolina/All brands);

Jim Leonard (Missouri/Chicago Title, Ticor Title, and Security Union);

Pat Hancock (Florida/Fidelity, Chicago Title, Ticor Title, and Security Union); and

Kelly Twigler (Kentucky/Chicago Title, Ticor Title, and Security Union).

Further answering, the Fidelity Third-Party Defendants state that in addition to the individuals listed above, the following current Fidelity Third-Party Defendant employees also provided information for the Fidelity Third-Party Defendants' response to Interrogatory Set One with respect to the states and brands identified in parentheses:

Rachel Affleck (Alabama/Chicago Title); and

Gustavo Abello (Illinois/Chicago Title).

**INTERROGATORY NO. 11:**

Identify all persons knowledgeable about blanket closing protection letter policies or practices of the brands in the corresponding states listed in the Chart.

**ANSWER:** In addition to the General Objections stated above, the Fidelity Third-Party Defendants object to this Interrogatory on the ground that it is duplicative of discovery sought in the *Terry* lawsuit, including but not limited to Interrogatory Nos. 3, 7, 9 of AMC's Second Set of Interrogatories and Topic I(15) of the December 31, 2009 Subpoena To Testify At A Deposition. The Fidelity Third-Party Defendants further object to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. The Fidelity Third-Party Defendants further object to this Interrogatory on the ground that it improperly seeks case-specific discovery which is not permitted pursuant to Judge Aspen's September 3, 2013 Memorandum Opinion and Order (Dkt. No. 5346).

Further answering, the Fidelity Third-Party Defendants refer AMC to their response to Interrogatory No. 7 of AMC's Interrogatories (Set Two) propounded on Fidelity Entities.

7

**INTERROGATORY NO. 14:**

Describe all systems or processes for generating, memorializing, or maintaining records of closing protection letters for each of the brands in the corresponding states listed on the Chart including but not limited to: (1) the name of any related website; (2) the time period the system or process was in use; (3) whether records of closing protection letters have been maintained; and (4) the brands and geographic scope of the system or processes.

**ANSWER:** In addition to the General Objections stated above, the Fidelity Third-Party Defendants object to this Interrogatory on the ground that it is duplicative of discovery sought in the *Terry* lawsuit, including but not limited to Topic (I)16 and Document Request Nos. 38 and 44 to the December 31, 2009 Subpoena To Testify At A Deposition, Document Request Nos. 38 and 44 to the December 31 2009 Subpoena To Produce Documents, Document Request Nos. 8, 19, 20, 21, 22, 23, 24, and 28 to AMC's Second Set of Document Requests, Document Request Nos.14 and 15 to AMC's Fourth Set of Document Requests. The Fidelity Third-Party Defendants further object to this Interrogatory on the ground that it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

Further answering, the Fidelity Third-Party Defendants refer AMC to their response to Interrogatory No. 2 of AMC's Interrogatories (Set One) propounded on Fidelity Entities.

Respectfully submitted,

Chicago Title Insurance Company, Commonwealth Land Title Insurance Company, Fidelity National Title Insurance Company, Lawyers Title Insurance Company, Ticor Title Insurance Company, American Pioneer Title Insurance Company, and Transnation Title Insurance Company.

By: _____

One of Their Attorneys

8

Albert E. Fowerbaugh, Jr.
Andrew D. Shapiro
Sandra J. Durkin
Butler Rubin Saltarelli & Boyd
70 West Madison Street, Suite 1800
Chicago, IL 60602
Phone: (312) 444-9660
Fax: (312) 444-9287

## CERTIFICATE OF SERVICE

The undersigned on oath states that he served the foregoing on:

    Randall L. Manvitz
    Buchalter Nemer, P.C.
    55 Second Street, Ste. 1700
    San Francisco, California 94105

    Joanne Davies, Esq.
    BuchalterNemer, P.C.
    18400 Von Karman Avenue, Suite 800
    Irvine, California 92612-0514

by mailing same in a properly addressed envelope, postage prepaid, and by depositing same in the U.S. mail and by electronic mail on the 29th day of July, 2014.

_____
Sandra J. Durkin

513565

10