IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) ) MDL No. 1715 ) ) Lead Case No. 05-cv-07097 ) ) (Centralized before the Honorable ) Marvin E. Aspen) ) |

## FIDELITY THIRD-PARTY DEFENDANTS' STATUS REPORT

Third-Party Defendants Alamo Title Insurance Company, Chicago Title Insurance Company, Chicago Title Company, Chicago Title Insurance Company of Michigan, Commonwealth Land Title Insurance Company, Commonwealth Land Title Company, Fidelity National Title Insurance Company, Fidelity National Title Insurance Company of New York, Lawyers Title Insurance Company, Security Union Title Insurance Company, Ticor Title Insurance Company, American Pioneer Title Insurance Company, and Transnation Title Insurance Company (collectively "Fidelity"), hereby submit their report regarding the status of discovery with Ameriquest in advance of the September 18, 2014 status conference before Magistrate Judge Martin.

### FIDELITY'S DISCOVERY REQUESTS TO AMERIQUEST

On April 2, 2014 Fidelity served its first set of interrogatories upon each of the third-party plaintiffs seeking answers to twelve interrogatories, and on April 5, 2014, Fidelity served its first set of document requests upon each of the third-party plaintiffs seeking the production of twenty-six categories of documents. Days before its responses were due, Ameriquest requested that Fidelity give nearly three extra months, until July 29, 2014, to respond to these requests.

Fidelity reluctantly agreed to this lengthy extension on the condition that Ameriquest provide substantive responses to its discovery requests. Ameriquest did not uphold its end of that bargain. On July 29, 2014, Ameriquest served its responses which, for the most part, do not provide substantive responses but instead contain boiler-plate objections. Copies of Ameriquest Mortgage Company's responses are attached as Exhibits A and B.

On August 1, 2014, Fidelity requested a meet-and-confer conference to discuss Ameriquest's responses and objections to these discovery requests. Fidelity initially proposed the conference take place on either August 5 or 6, but Ameriquest's counsel did not make themselves available until September 15. Notwithstanding this additional time to prepare for the conference, when the parties finally spoke, Ameriquest's counsel was unable to substantively address any of Ameriquest's objections or responses to Fidelity's requests, nor could they commit to a date by which they would be able to provide substantive responses. Rather, Ameriquest's counsel merely announced that they needed another two weeks to "get back to [us]" but that even then they could not guarantee that they would be able to provide substantive responses at that time.

Ameriquest's refusal to substantively meet-and-confer is plainly designed to delay the litigation to enable Ameriquest to continue to withhold relevant documents and information. For example, the crux of Ameriquest's claims against Fidelity in its Third-Party Complaint is its allegation that Fidelity issued to Ameriquest certain closing protection letters, obligating Fidelity to reimburse Ameriquest for losses incurred in connection with the plaintiffs' claims against it. Ameriquest first made these allegations *over seven years ago* in its initial Third-Party Complaint. (Dkt. No. 955, ¶ 15.) Yet, when Fidelity requested Ameriquest to produce these alleged letters, Ameriquest raised a number of baseless objections to those requests as a means to withhold, or

2

refuse to search for, relevant documents and information. For example, in response to a request that Ameriquest produce "any and all multi-transaction closing protection letters [,]" Ameriquest responded that "once Fidelity explains what this request seeks, Ameriquest will make an effort to comply with the request to the extent it is not unduly burdensome." (*See* Ex. A at Resp. Nos. 1 and 2.) During the meet-and-confer conference, Fidelity's counsel asked Ameriquest's counsel what they did not understand about that request. Surprisingly, Ameriquest's counsel was unwilling or unable to answer that question. Ameriquest also objected to this and many other requests on the ground that the request was "premature." (*See e.g.*, Ex. A at Resp. Nos. 1 and 2.) It is inconceivable how Fidelity's request that Ameriquest produce the closing protection letters is premature given that *seven years ago* Ameriquest alleged that these documents existed and were in its possession. As another example of Ameriquest's failure to meet-and-confer in good faith, in response to several requests, Ameriquest stated that "many" of the requested documents have been produced, but refused to confirm that it would produce the remaining responsive documents. (*See e.g.*, Ex. A at Resp. Nos. 3-4.)

      Ameriquest was equally uncooperative in attempting to resolve its objections to Fidelity's interrogatories. For example, several of the interrogatories sought the identification of individuals knowledgeable about certain topics. While Fidelity, in response to similar interrogatories, identified 45 individuals, Ameriquest refused to do so, opting instead to generally refer to "Vendor Management, the compliance group, and all production personnel and personnel of the title companies . . . ." (*See e.g.*, Ex. B at Resp. No. 6.) During the recent meet-and-confer call, Ameriquest's counsel was unwilling or unable to state whether Ameriquest would be willing to specifically identify any knowledgeable individual.

3

Finally, in response to many interrogatories, Ameriquest's responses state that the answers can be found in documents it already produced, but fail to identify those documents "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could" as required by Rule 33(d) of the Federal Rules of Civil Procedure. (*See e.g.*, Ex. B at Resp. Nos. 2-6.) Likewise, in response to other interrogatories, Ameriquest's responses state that "*some* of the [requested] information" can be found in certain deposition transcripts, but fail to identify the pages of the transcripts where the responsive information supposedly can be found and fails to provide the remaining information that is not found within those transcripts. (*See e.g.*, Ex. B at Resp. Nos. 9-12.) During the conference, Ameriquest's counsel was unwilling or unable to substantively address these responses. Ameriquest's improper delay tactics are clearly aimed at blocking Fidelity from moving to compel discovery to which it has long been entitled.

## **AMERIQUEST'S DISCOVERY REQUESTS TO FIDELITY**

During the past year, Ameriquest has served extensive and duplicative discovery requests upon Fidelity, including: (i) two sets of document requests served by Ameriquest Mortgage Company seeking the production of 45 categories of documents; (ii) two sets of interrogatories served by Ameriquest Mortgage Company seeking answers to 16 interrogatories that encompass the policies and practices of seven of the Fidelity brands in six states over a six-year period; (iii) one set of document requests served by Argent Mortgage seeking the production of six categories of documents; (iv) one set of document requests served by Town & Country seeking the production of six categories of documents; (v) a Rule 30(b)(6) deposition notice seeking testimony on fifteen topics and seeking the production of seventeen additional categories of documents; and (vi) an additional set of document requests seeking the production of the same

4

seventeen categories of documents that were sought in the deposition notices. These discovery requests sought information regarding seven of Fidelity's various brands' practices, policies, and procedures, in six different states, for issuing multi-transaction closing protection letters between 2001 and 2006.

Many of these requests are objectionable because they sought claim specific discovery in violation of Judge Aspen's order limiting discovery to "non-case-specific discovery" (Dkt. No. 5346, p. 12), sought discovery of brands and/or states not at issue in this MDL proceeding, or was duplicative of the extensive discovery already taken in the *Terry v. Ameriquest Mortgage Co.* litigation prior to the transfer of that case from Judge Chang to Judge Aspen.[1] Nonetheless, Fidelity and its counsel engaged in an extensive, time-consuming and expensive investigation, including interviewing over 45 individuals, in order to answer these interrogatories and locate responsive documents and data. Fidelity has supplemented its responses as new information was located, but has now completed its investigation and produced the responsive documents. Copies of Fidelity's final responses are attached as Exhibits C and D. During the most recent meet-and-confer call, Ameriquest's counsel asked a number of substantive questions regarding

---

[1] That discovery included: (i) Ameriquest's First Set of Document Requests to Ticor – 51 categories of document requests; (ii) Ameriquest's Second Set of Document Requests to Ticor – 53 categories of document requests; (iii) Ameriquest's Third Set of Document Requests to Ticor – 16 categories of document requests; (iv) Ameriquest's Fourth Set of Document Requests to Ticor – 22 categories of document requests; (v) Ameriquest Mortgage Company's First Set of Interrogatories to Ticor – 35 Interrogatories; (vi) Ameriquest Mortgage Company's Second Set of Interrogatories to Ticor – 12 Interrogatories; (vii) Ameriquest Mortgage Securities' First Set of Interrogatories to Ticor – 7 Interrogatories; (viii) Ameriquest Mortgage Securities' Second Set of Interrogatories to Ticor – 11 Interrogatories; (ix) Ameriquest's Rule 30(b)(6) deposition notice to Ticor regarding "closing protection letter data" listing 12 deposition topics and 34 document requests; (x) Ameriquest's Rule 30(b)(6) deposition notice to Ticor regarding "agency status" listing 11 deposition topics and 51 document requests; (xii) Ameriquest's Rule 30(b)(6) deposition notice to Ticor regarding "closing protection letters" listing 23 deposition topics and 51 document requests; (xiii) Ameriquest's Rule 30(b)(6) deposition notice to Ticor regarding "closing protection letter interpretation" listing 18 deposition topics and 51 document requests; (xiv) subpoena served upon Fidelity for production of 60 categories of documents; (xv) subpoena served upon Fidelity seeking testimony of corporate representatives on 18 separate topics relating to closing protection letters across all brands and all states; and (xvi) subpoena served upon Fidelity seeking testimony of the corporate representative regarding Fidelity's various brands' policies and practices regarding the issuance of multi-transaction closing protection letters, as well as seeking the production of seven categories of documents regarding their issuance of closing protection letters.

these responses, most of which Fidelity's counsel answered during that call.  Fidelity is working diligently to resolve the few follow-up matters that it was not able to address during the call.

Ameriquest continues to propound burdensome and duplicative discovery on Fidelity.  Fidelity first disclosed the identity of all but two of the individuals who provided the answers to Ameriquest's interrogatories in March, 2014, and Ameriquest is just now seeking to depose some, if not all, of those 45 individuals even though all of their knowledge regarding the issues at hand has already been disclosed to Ameriquest in the interrogatory answers.   In addition, Ameriquest will undoubtedly complain about Fidelity's discovery responses.  But even a cursory comparison of Fidelity's substantive responses to Ameriquest's boilerplate objections demonstrates the extensive effort that Fidelity has made to respond to Ameriquest's requests.  (*See, e.g*. Ex. C at Resp. No. 2, pp. 3-21; Ex. D. at Resp. No. 7, pp. 4-7.)  Ameriquest, on the other hand, has unfortunately made a similar effort.

> Respectfully submitted,
>
> Alamo Title Insurance Company, Chicago Title Insurance Company, Chicago Title Company, Chicago Title Insurance Company of Michigan, Commonwealth Land Title Insurance Company, Commonwealth Land Title Company, Fidelity National Title Insurance Company, Fidelity National Title Insurance Company of New York, Lawyers Title Insurance Company, Security Union Title Insurance Company, Ticor Title Insurance Company, American Pioneer Title Insurance Company, and Transnation Title Insurance Company.
>
> By: /s/ Albert E. Fowerbaugh, Jr.
>        One of Their Attorneys

Albert E. Fowerbaugh, Jr.
Andrew D. Shapiro
Sandra J. Durkin
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Ste. 1800
Chicago, IL  60602

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true copy of the preceding document was served on September 17, 2014 on all counsel of record, in accordance with Fed. R. Civ. P. 5, Local Rule 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

      /s/ Albert E. Fowerbaugh, Jr.

519453