IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715 |
| | Lead Case No. 05-cv-07097 |
| THIS DOCUMENT RELATES TO ALL ACTIONS | (Centralized before The Honorable Marvin E. Aspen) |
| | Magistrate Judge Daniel G. Martin |

**STATUS REPORT OF THE AMERIQUEST DEFENDANTS CONCERNING FIDELITY-ENTITIES**

Little progress has been made on discovery since the parties were before the Court last month. Ameriquest has been following up on its efforts to find out when Fidelity lost or destroyed the closing protection letters at issue in this litigation. Fidelity refuses to produce a 30(b)(6) witness on the topic and proposed providing written interrogatory responses instead. After waiting patiently for the written information – Fidelity now says it will not provide the requested information in any format. For example, Fidelity will not state whether it ever made copies of the missing closing protection letters, whether it had a procedure for memorializing the closing protection letters it entered into for the missing letters; whether and where it searched for the missing closing protection letters; and knowledgeable former employees that would have been in a position to know this information. Once again, Fidelity has stalled discovery by not producing this foundational information and a motion to compel will be filed in the upcoming weeks.

To change the focus of the Court's attention, Fidelity tries to paint a misleading picture of its meet and confer efforts concerning its own discovery regarding three sets of requests for production and three sets of interrogatories covering three different third-party plaintiffs Argent Mortgage Company, Ameriquest Mortgage Company, and Town and Country Credit Corporation. Fidelity first asked to meet and confer by email on August 1 and the Ameriquest

1

related entities asked for some description of the issues. Fidelity ignored these repeated requests for a simple explanation and never mentioned meeting and conferring following the status conference until the Ameriquest entities repeatedly requested that Fidelity meet and confer to explain their failure to provide the information about Fidelity's spoliation that Fidelity previously agreed to provide as part of the parties prior meet and confers. Now Fidelity makes much ado of Ameriquest's counsel stating that it would have to review the issues raised by Fidelity instead of giving "off the cuff" answers on Fidelity's previously unstated issues raised for the first time by Fidelity on September 15. This is just a red-herring, designed to re-direct the Court's attention from Fidelity's apparent spoliation of documents and refusal to provide information about the spoliation or even the prior existence of the documents directly at issue in this litigation.

### A. Background of Closing Protection Letters

Closing protection letters are indemnity agreements issued by an underwriter such as the Fidelity entities to encourage a lender such as Ameriquest to do business with them. Ameriquest required a closing protection letter before it would do business with an underwriter's issuing agent. To ensure that a closing protection letter applied to each transaction, Ameriquest required that an underwriter issue a blanket closing protection letter at the beginning of the relationship. A blanket closing protection letter means that it applies to every future loan transaction.

In this litigation, Ameriquest made third-party claims against the Fidelity-entities under the closing protection letters because the letters indemnify Ameriquest from losses caused by the issuing agent. It is beyond reasonable dispute that Fidelity issues closing protection letters for practically every loan transaction, and Ameriquest has sought the closing protection letters from Fidelity through discovery.

### B. Discovery Concerning Closing Protection Letters

Fidelity has fought tooth and nail to avoid providing any information about its closing protection letters or practices with repeated motion after motion to avoid responding. *See* historical background of Fidelity's repeated motions in Ameriquest's August 7, 2014 Supplemental Status Report. *See* Ameriquest's Supplemental Status Report attached as Exhibit

2

17050554v1

1. In March 2014, Fidelity finally started providing some information in response to Ameriquest's September 2012 first set of interrogatories after repeatedly obstructing discovery by claiming it was stayed or trying to disband the MDL to avoid discovery. 9/3/13 Order, MDL Dkt. 5346 at p. 3, 9. For many of the closing protection letters, Fidelity claimed to be "unable to locate" the letters or spreadsheets of data from the websites frequently used to issue the data.

Ameriquest immediately asked some basic questions, ultimately in the form of a 30(b)(6) notice and interrogatories:

1. Where did Fidelity search for the missing data and closing protection letters?
2. What was Fidelity's process to generate the letters, memorialize them, duplicate them, and retain them, and if applicable, destroy them.
3. Who are the people with information about the aforementioned issues so they can be deposed if necessary.

Fidelity refused to provide a witness. On May 22, 2014, Ameriquest filed a motion to compel [Dkt. 5470] which was subsequently stricken to allow the parties to meet and confer and Fidelity to respond to the document request. The parties met and conferred on the first day that Fidelity would agree to confer, June 12, 2014. On June 20, 2014, Fidelity provided a letter outlining information it would provide. *See* Fidelity's counsel's June 20 letter attached as Exhibit 2. Ameriquest agreed that it would defer filing a motion to compel on the 30(b)(6) notice until Fidelity provided the information it stated it would provide and the parties had an opportunity to further meet and confer. *See* Ameriquest's counsel's July 9 letter attached as Exhibit 3.

Fidelity did not provide the information it said it would provide on July 29. Fidelity previously wrote that it would describe:

(1) "the document retention and back-up policies applicable to the Data"
(2) "the search undertaken to locate the Data in connection with the litigation"
(3) "the back-up system or back-up media which contains or contained the Data"

3

17050554v1

(4) "the identity of individuals/entities responsible for the custody, maintenance, preservation, and/or destruction of the Data"

(5) "[t]he destruction, loss, or inability to access or locate Missing Data or Missing Closing Protection Letters for each applicable brand and state including "(a) the date(s) it was lost, destroyed, and, or no longer accessible from the web or by an issuing agents or by Third-Party Defendants' employees; (b) electronic media and systems it has been located on; (c) any duplicates or back-ups containing the missing documents or data; (d) back-up systems for the missing documents or data; (e) any explanation why it cannot be found or what happened to it; (f) whether it was deleted or otherwise destroyed; (g) any records reflecting its status at any time; (h) why it was deleted or otherwise not maintained such that it was accessible." (30(b)(6) Topic 10).

However, Fidelity has reneged and practically no information has been provided. Fidelity refuses to provide this information in any format without a court order because it will show the closing protection letters were spoliated.

- Fidelity refuses to state where it looked for the data or closing protection letters. In contrast, on June 20, 2014, Fidelity wrote that it would describe "the search undertaken to locate the Data in connection with the litigation."

- Fidelity refuses to state its processes for retaining records of closing protection letters such as duplicate copies and, or back-ups of data or copies. In contrast, on June 20, 2014, Fidelity wrote that it would describe "the document retention and back-up policies applicable to the Data" and "the back-up system or back-up media which contains or contained the Data."

- Fidelity refuses to identify former employees who its employees believe may have knowledge of this information or produce any organizational charts or employee lists which would contain the identity of former employees who may have this information. In contrast, on June 20, 2014, Fidelity wrote that it would describe "the identity of individuals/entities responsible for the custody, maintenance, preservation, and/or destruction of the Data."

Fidelity also stated that it would describe: "[t]he destruction, loss, or inability to access or locate Missing Data or Missing Closing Protection Letters for each applicable brand and state including "(a) the date(s) it was lost, destroyed, and, or no longer accessible from the web or by

4

an issuing agents or by Third-Party Defendants' employees; (b) electronic media and systems it has been located on; (c) any duplicates or back-ups containing the missing documents or data; (d) back-up systems for the missing documents or data; (e) any explanation why it cannot be found or what happened to it; (f) whether it was deleted or otherwise destroyed; (g) any records reflecting its status at any time; (h) why it was deleted or otherwise not maintained such that it was accessible." (30(b)(6) Topic 10.

      Fidelity suggests it can back-track on providing the information it stated it would provide in its June 20, 2014 letter because it subsequently changed its explanation about the data from being "unable to locate" the data to not knowing whether the Fidelity website tracked what closing protection letters were issued. This makes no sense and if anything, just shows that Fidelity's proposal to provide information in lieu of a 30(b)(6) was just a delay tactic because no information was provided. Ameriquest still needs the same information (identity of people, places searched, processes for copying and memorializing, etc.) that Fidelity previously represented it would provide and Fidelity proposed providing in lieu of a 30(b)(6) deposition. Ameriquest has no choice but to re-file a motion to compel to obtain the information Fidelity said it would provide in addition to the other requested information.

      To try to keep Ameriquest from deposing the people who would know, Fidelity refuses to identify the former employees responsible for the websites who would have this information or persons knowledgeable about the closing protection letter practices for many of the brands with no closing protection letter documents or information produced such as American Pioneer, Commonwealth, Transnation, and Lawyer's Title. It is implausible that Fidelity is unable to determine this information and not credible that Fidelity did not have a method of determining the existence of indemnity agreements it issued encompassing millions of loans.

      Ameriquest's interrogatories request the Fidelity process of record-keeping for the closing protection letters such as maintaining hard copies. But Fidelity just objects to providing this basic information so a motion to compel is necessary.

5

17050554v1

Additionally, on July 29, 2014, Fidelity updated its March 14, 2014 list of persons of about 40 persons who reportedly provided some information in response to the interrogatories pending since 2012 about Fidelity's blanket closing protection letter practices and a short statement of its blanket closing protection letter practices for 28 states and brands and added additional information about its blanket closing protection letter practices although much of the requested information is still missing. The parties met and conferred about some of the missing information. For example, Ameriquest asked for a title and job description of the list of persons so it could determine who to depose. Fidelity refuses to provide this information.

### C. Fidelity Paints A Misleading Picture of Its Discovery Requests

Now that it is apparent that Fidelity spoliated its records of closing protection letters, Fidelity is trying to change the subject by raising issues about the discovery it propounded. In its last status conference report, Fidelity made a misleading assertion that Ameriquest refused to meet and confer about its discovery responses before the status conference. Ameriquest responded to Fidelity's discovery on July 29. On the afternoon of Friday, August 1, 2014, Fidelity's counsel sent an email requesting a meet and confer conference for Tuesday or Wednesday, August 5 or 6, even though Ameriquest's counsel would obviously be traveling to Chicago on Wednesday for the August 7 Status Conference. *See* E-mail exchange with counsel attached as Exhibit 4. On Monday, August 4, Ameriquest's counsel responded explaining that the proposed dates did not work but that they were agreeable to participating in a meet and confer call and requested a description of the issues in advance so that Ameriquest's counsel would be prepared to address them on the call. *Id.* Ameriquest's counsel also asked for a meet and confer about Fidelity's responses at the same time. *Id.* No response was received and Fidelity never mentioned meeting and conferring again until it proposed September 16 and Ameriquest suggested September 15 and after Ameriquest had for a few weeks tried to get Fidelity to meet and confer to explain its failure to provide information about spoliation. *See* E-mail exchange with counsel attached as Exhibit 5.

17050554v1

When the parties again scheduled a meet and confer, Ameriquest again implored Fidelity to describe the issues in advance of the call so that Ameriquest could be prepared to address them. *Id.* Although it had over a month to write a letter, Fidelity's counsel declined. *Id.* On the meet and confer call, Ameriquest's counsel explained that they would have to subsequently respond to the issues raised and could do so within two weeks because the issues with respect to six sets of discovery were being raised for the first time. Ameriquest stated that they would endeavor to respond within two weeks, a much shorter time than Fidelity's counsel takes to respond to meet and confer issues.

Respectfully submitted,

Dated: September 17, 2014

By: /s/ Randall L. Manvitz
*Attorneys for the Ameriquest Defendants*

Randall L. Manvitz
Joanne N. Davies
BUCHALTER NEMER,
A Professional Corporation
55 Second Street, Suite 1700
San Francisco, CA 94105
Telephone: (415) 227-3644
Facsimile: (415) 227-0700

## CERTIFICATE OF SERVICE

I, Joanne N. Davies, hereby certify that on this 17th day of September 2014, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Joanne N. Davies