# EXHIBIT 1

**Davies, Joanne**

| | |
|---|---|
| **From:** | Randall <manvitz@hotmail.com> |
| **Sent:** | Thursday, August 07, 2014 6:33 AM |
| **To:** | Davies, Joanne; Gilbert, Constance M; Kam, Pamela |
| **Subject:** | FW: Ameriquest's Supplemental Status Report |
| **Attachments:** | Ameriquest's Supplemental Status Report.pdf |

From: manvitz@hotmail.com
To: lynette_santiago@ilnd.uscourts.gov
CC: afowerbaugh@butlerrubin.com; ashapiro@butlerrubin.com
Subject: Ameriquest's Supplemental Status Report
Date: Thu, 7 Aug 2014 08:29:58 -0500

Please find attached Ameriquest's Supplemental Status Report for today's hearing. We had difficulties with filing it on Pacer.

Randall Manvitz

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION<br><br>THIS DOCUMENT RELATES TO ALL ACTIONS | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before The Honorable Marvin E. Aspen)<br><br>Magistrate Judge Daniel G. Martin |

**SUPPLEMENTAL STATUS REPORT OF THE AMERIQUEST DEFENDANTS IN RESPONSE TO FIDELITY'S STATUS REPORT**

In its status report, Fidelity makes two misleading assertions in support of its argument that discovery should be terminated in an effort to run out the clock on discovery.

A. **Discovery in the MDL Concerning Fidelity's Closing Protection Letter Practices Just Started in March 2014**

Fidelity's request to terminate discovery is a thinly-veiled ruse to try to run out the clock on discovery into its closing protection letter practices. The Fidelity Status Report misleadingly claims that it has participated in discovery in the MDL for seven years. But the first time it substantively responded to discovery in the MDL was in March 2014 and has since then claimed it needed more time to supplement the information and just did so on July 29, 2014. Fidelity fought tooth and nail to avoid providing any information about its closing protection letter practices at issue in the MDL for years, typically claiming that discovery was stayed until Judge Aspen repeatedly overruled its seriatim objections in September 2013.

By way of background, the closing protection letters are indemnity agreements that Fidelity issued to indemnify Third-Party Plaintiffs for losses arising from the loan closings by Fidelity's title company agents. *See Terry v. Ameriquest*, 08CV02475 ("*Terry*"), Dkt. 731. Third-Party Plaintiffs contend that Fidelity issued blanket closing protection letters meaning that one letter applied to future transactions instead of a single transaction. Fidelity has typically

1

argued that its letters only cover a single transaction but Fidelity's position has repeatedly been shown to be unsupported. *See Terry* Dkt. 731, 737, 771, MDL Dkt. 4389. Discovery into Fidelity's closing protection letter practices has long been at issue. In 2009, Judge Aspen this Court ordered the parties involved in the third-party claims to exchange any contracts at issue in their possession. Fidelity provided none. Also in 2009, Ameriquest subpoenaed Fidelity's data memorializing the blanket closing protection letters that had been issued. Fidelity avoided providing any. Also, Ameriquest propounded its first set of interrogatories and requests for production in the MDL in August 2012 seeking that information. As the Court previously ruled, one of the central issues for discovery in the MDL is Fidelity's closing protection letter practices and the interpretation of the closing protection letters. Order, *Terry*, Dkt. 782; Order, MDL Dkt. 5346 at 3, 9.

The closing protection letters were typically generated via Fidelity websites which allowed Fidelity through its title agents to complete the form letter with addressee information and sometimes a regarding line. One purpose of the closing protection letter websites was to memorialize closing protection letters that had been issued and allow them to be re-printed if lost or needed to be reproduced. Closing protection letters that had been issued during the history of the website were maintained as data on a spreadsheet showing the date of issuance and any language added to the form letter such as the addressee ("Closing Protection Letter Database Spreadsheet"). *See* MDL Dkt. *4389-8*. Recreating a closing protection letter should be as simple as reviewing the Closing Protection Letter Database Spreadsheet and the form of closing protection letter used so the initial discovery has focused on obtaining those two foundational types of documents. Fidelity has fought for seven years to try to hide this basic information and only in March 2014 disclosed that much of their records had been destroyed or lost.

Fidelity has avoided discovery into its closing protection letter practices for years by asserting objection after objection to avoid discovery. First Fidelity filed two motions for protective order. *See Terry v. Ameriquest*, 08CV02475, Dkts. 572, 586, 2/4/10 and 2/19/10 (Fidelity and Ticor motions for protective order re: data of closing protections that had been

2

issued). Then Fidelity claimed discovery was stayed in *Terry* because of the MDL and filed another motion for protective order and objected to other discovery requiring a motion to compel. *See Terry* Dkts. 718, 731, 759, 6/27/2011 to 3/8/2012 (Fidelity motion for protective order re: closing protection letters because discovery was purportedly stayed and Ameriquest's motion to compel and Judge Chang order). Then another motion to compel was required to force Fidelity to participate in discovery. See *Terry* Dkts. 771, 774, 781, 6/27/2012 to 7/19/2012 (Ameriquest's motion to compel, Fidelity's opposition, Judge Chang's order).

In *Terry*, Ameriquest obtained for one Fidelity entity (Ticor) and one state (Illinois): (1) the form closing protection letters, and (2) the Closing Protection Letter Database Spreadsheet memorializing how each closing protection letter had been issued from approximately 2003 to 2006. *See e.g.,* MDL Dkt. 4389-7 (Ticor-Illinois closing protection letter form). These documents have repeatedly been before the Court to show the Court the nature of the common dispute over the interpretation of the closing protection letters and the roadmap for the same discovery in the MDL on a much broader scale. *See* MDL Dkt. 4389-8.

In the MDL, there are 28 Fidelity subsidiary and state combinations other than the Ticor-Illinois documents obtained in *Terry* so the same type of discovery was sought again in the MDL but for the 28 additional subsidiary and state combinations versus two in *Terry*. Discovery in the MDL was stayed until the parties completed mediation. Following mediation with Fidelity, Ameriquest propounded its first set of interrogatories and requests for production in August 2012. Fidelity objected that discovery was stayed in the MDL and refused to substantively respond. MDL Dkts. 5082, 9/17/12 (Ameriquest's motion to overrule Fidelity's objection that discovery stayed). Judge Denlow orally ruled that the parties should raise the issue with Judge Aspen to determine the scope of discovery in the MDL. MDL Dkt. No. 5123-7, 9/20/12, Tr. of Hrg. at 17–18. Four days later, Fidelity tried to avoid having the matter being decided by Judge Aspen by preemptively filing a motion to disband the MDL, claiming that the Court did not have jurisdiction over Third-Party Defendant issues. Dkt. 5101, 9/24/12 (Fidelity motion). The Court overruled Fidelity's "motion to disband the consolidated third-party action" in September 2013

3

16181609v1

and ruled that the common issues presented by Ameriquest's first set of interrogatories and requests for production – closing protection letters - should proceed in the MDL. 9/3/13 Order, MDL Dkt. 5346 at p. 3, 9.

Now, Fidelity has tried a different tactic to avoid participating in discovery about its closing protection letter practices and producing the Closing Protection Letter Database Spreadsheets and form closing protection letters which will establish that blanket closing protection letters were issued to Ameriquest. Fidelity tried to run out the clock by delaying providing its substantive responses to Ameriquest's first set of discovery pending since August 2012 until mid-March 2014. Since the Court's denial of the motion to disband the third-party consolidated action in September 2013, Fidelity's counsel repeatedly explained that they were working diligently on collecting: (1) the spreadsheets of closing protection letter data which memorialize the closing protection letters that had been issued, (2) exemplar closing protection letters for each brand and state at issue, and (3) information on the process for issuance of the letters, typically a web-site specifically for completing the form letters and memorializing their issuance to allow them to be reprinted in the future. Third-Party Plaintiffs patiently waited because Fidelity's counsel repeatedly stated they needed more time because of the breadth of information at issue. Finally, on March 10, 2014, Fidelity revealed that it is "**unable to locate**" its Closing Protection Letter Database Spreadsheets and, or form closing protection letters for many of the state combinations at issue in the MDL that had websites and also are unable to locate a single example of a closing protection letter for many states and brands although they were utilized for practically every loan closing for years.

While Fidelity has been fighting tooth and nail to avoid discovery into the closing protection records in *Terry* and the MDL, the documents were apparently being destroyed. This has serious implications for this litigation and will require a significant amount of follow-up discovery concerning spoliation.

On April 24, 2014, upon learning of the apparent spoliation, Ameriquest requested that Fidelity explain what happened to the Closing Protection Letter Database and requested

4

16181609v1

proposed dates for a 30(b)(6) deposition concerning what happened to the Closing Protection Letter Database, form closing protection letters, back-up policies and procedures, and document destruction policies. To date, practically no information has been provided. On May 22, 2014, Ameriquest filed a motion to compel [Dkt. 5470] which was subsequently stricken to allow the parties to meet and confer and Fidelity to respond to the document request. When the parties met and conferred by telephone on June 12, 2014, the first day that Fidelity would agree to do so, Fidelity asserted that it needed until July 29, 2014 to provide any information about what happened to the documents, the burden of providing additional information, and whether it had any documents to produce. Fidelity explained that it would have to get back to Ameriquest on a variety of issues on or after July 29. Ameriquest agreed that it would defer filing a motion to compel on the 30(b)(6) notice until Fidelity provided the information it stated it would provide and the parties had an opportunity to further meet and confer.

Fidelity did not provide the information it said it would provide on July 29. Fidelity wrote that it would describe:

(1) "the document retention and back-up policies applicable to the Data"

(2) "the search undertaken to locate the Data in connection with the litigation"

(3) "the back-up system or back-up media which contains or contained the Data"

(4) "the identity of individuals/entities responsible for the custody, maintenance, preservation, and/or destruction of the Data"

(5) "[t]he destruction, loss, or inability to access or locate Missing Data or Missing Closing Protection Letters for each applicable brand and state including "(a) the date(s) it was lost, destroyed, and, or no longer accessible from the web or by an issuing agents or by Third-Party Defendants' employees; (b) electronic media and systems it has been located on; (c) any duplicates or back-ups containing the missing documents or data; (d) back-up systems for the missing documents or data; (e) any explanation why it cannot be found or what happened to it; (f) whether it was deleted or otherwise destroyed; (g) any records reflecting its status at any time; (h) why it was deleted or otherwise not maintained such that it was accessible."

5

On July 29, 2014, Fidelity produced a handful of documents (including a spreadsheet of over 20,000 closing protection letters) and a grossly insufficient response providing little of the limited information it agreed to provide. Instead of explaining what happened to the closing protection letter databases, Fidelity's responses leave more questions than answers. For example, instead of explaining what happened to the databases, Fidelity repeatedly states that it does not know whether the websites memorialized the letters in a database. It is implausible that Fidelity is unable to determine this information and not credible that they did not have a method of determining the identity of indemnity agreements generated in their name on their website and did not have a process of keeping a copy. Every website still available is used for that purpose. If the website did not memorialize the closing protection letter, how did Fidelity know what letters had been issued? Fidelity never states what happened to the website and its related software. Fidelity does not identify the persons previously responsible for the websites or persons knowledgeable about the websites and limit its responses to current employees. By refusing to identify former employees responsible for the websites and knowledgeable about its closing protection letter practices, Fidelity is attempting to quash any fact-finding into the closing protection letters.

Additionally, on July 29, 2014, Fidelity updated its March 14, 2014 list of persons who provided information in response to the interrogatories pending since 2012 about Fidelity's blanket closing protection letter practices and a short statement of its blanket closing protection letter practices for 28 states and brands and added additional information about its blanket closing protection letter practices although much of the requested information is still missing. Follow-up discovery and potentially motion practice will be necessary to determine the necessary details avoided in Fidelity's responses to Ameriquest's two sets of interrogatories and requests for production. Thereafter, at least some of the 45 witnesses will need to be deposed along with others who appear to have more knowledge but were not identified.

On July 29, 2014, Fidelity also produced two spreadsheets of closing protection letters, one with over 20,000 Ameriquest-related parties' closing protection letters listed although the

6

issuing agent is often not identified by name. Follow-up discovery is necessary to decipher this long-withheld document which should have been produced when it was first requested in 2009.

### B. Fidelity Paints A Misleading Picture of Its Discovery Requests

Fidelity makes a misleading assertion that Ameriquest refused to meet and confer about its discovery responses before this status conference. Ameriquest responded to Fidelity's discovery on July 29. On Friday at 6:13 p.m. CT, Fidelity's counsel sent an email requesting a meet and confer conference for Tuesday or Wednesday this week, even though Ameriquest's counsel would obviously be traveling to Chicago on Wednesday for the Status Conference. On Monday, Ameriquest's counsel responded explaining that the proposed dates did not work but that they were agreeable to participating in a meet and confer call and requested a description of the issues in advance so that Ameriquest's counsel would be prepared to address them on the call. Ameriquest's counsel also asked for a meet and confer about Fidelity's responses at the same time. No response was received.

### I. CONCLUSION

Third-Party Plaintiffs respectfully request that this Court continue to allow third-party discovery to proceed in the MDL and deny the Fidelity Third-Party Defendants' request to terminate discovery.

Respectfully submitted,

Dated:  August 7, 2014

By: /s/ Randall L. Manvitz
*Attorneys for  the Ameriquest Defendants*

Randall L. Manvitz
Joanne N. Davies
BUCHALTER NEMER,
A Professional Corporation
55 Second Street, Suite 1700
San Francisco, CA 94105
Telephone: (415) 227-3644
Facsimile: (415) 227-0700

7

16181609v1

**CERTIFICATE OF SERVICE**

I, Randall L. Manvitz, hereby certify that on this 7th day of August 2014, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/  Randall L. Manvitz

16181609v1