# EXHIBIT 2

# BUTLER RUBIN SALTARELLI & BOYD LLP

June 20, 2014

Ira J. Belcove
Direct Dial: 312-696-4462
Direct Fax: 312-444-1116
ibelcove@butlerrubin.com

**BY E-MAIL**

Joanne N. Davis
Randall Manvitz
Buchalter Nemer, P.C.
18400 Von Karman Avenue
Suite 800
Irvine, California 92612-0514

Re:     In re Ameriquest Mortgage Co. Mortgage Lending Practices Litigation
           MDL No. 1715; Lead Case No. 05-cv-07097

Dear Joanne and Randall:

I write to follow up on the hour-and-a-half meet-and-confer teleconference that we engaged in on June 12, 2014 during which we discussed Ameriquest's Rule 30(b)(6) Deposition Notice (including the document requests attached to the notice) and the Fidelity Third-Party Defendants' Responses and Objections thereto.

As you know, the crux of Ameriquest's claims against the Fidelity Third-Party Defendants is Ameriquest's contention that the Fidelity Third-Party Defendants are obligated to reimburse Ameriquest for certain amounts pursuant to the terms of a closing protection letter with respect to each of approximately 253 separate loans at issue in this MDL proceeding. According to the most recent version of Ameriquest's third-party complaint, Ameriquest alleges that a closing protection letter was issued for each of those loans.  (*See* Fifth Am. Consolidated Third-Party Compl. at ¶ 15 ("On information and belief, Closing Protection Letters were issued for each loan listed in Exhibits A & B hereto.") (Dkt. No. 2913).)   Based on that claim, in July of 2009, Magistrate Judge Denlow ordered Ameriquest to produce the relevant loans files, including "any agreement with the Third-Party Defendants that governed the closing of the particular loan or loans at issue," and "information sufficient for the Third-Party Defendants to locate the files at issue."  (*See* July 23, 2009 Order at ¶ 3) (Dkt. No. 4367.)

Consistent with that order, on June 9, 2010, Ameriquest provided the Fidelity Third-Party Defendants with a 78-page chart listing the "operative contracts as between Ameriquest and Argent, and the various third-party defendants."  (*See* June 9, 2010 Letter from B. Newman to K. Walter, a copy of which is attached hereto.)  Ameriquest subsequently supplemented that list on two occasions.  The June 9, 2010 chart provided the Bates-numbers for each of the closing protection letters that Ameriquest contends apply to each of the approximately 253 loans at issue.



Joanne N. Davis
Randall Manvitz
June 20, 2014
Page 2

Although Ameriquest apparently possess a copy of each closing protection letter relevant to each of its claims against the Fidelity Third-Party Defendants (and identified each letter in the June 9, 2010 chart), Ameriquest has nonetheless inundated the Fidelity Third-Party Defendants with discovery requests concerning those closing protection letters.  Additionally, Ameriquest has also sought discovery about multi-transaction closing protection letters (*i.e.*, closing protection letters that applied to more than one loan transaction) despite having already identified the relevant letters.

Most recently, Ameriquest sought:  (1) a description of the policies and practices of seven separate brands in six different states (28 brand/state combinations) with respect to the issuance of multi-transaction closing protection letters; (2) data concerning the issuance of multi-transaction closing protection letters from each of the 28 brands/states; and (3) exemplar multi-transaction closing protection letters for each of the 28 brands/states.

Given that Ameriquest already possesses (and has identified) all of the closing protection letters purportedly issued in connection with the approximately 253 relevant loans, Ameriquest's request for multi-transaction closing protection letter information was neither necessary nor relevant to the issues raised in Ameriquest's third-party complaint.  Nonetheless, in the spirit of compromise, the Fidelity Third-Party Defendants conducted an investigation to locate and produce the requested information.  That was not any easy undertaking.  Because the information Ameriquest sought was not centrally located, the Fidelity Third-Party Defendants separately inquired about each of the 28 state/brand combinations to locate the requested information.  Specifically, we communicated with 43 different people to obtain the requested information.  At Ameriquest's request, we identified each of those 43 people in an interrogatory response.  (*See* Fidelity Third-Party Defendants' Supplemental Responses to Ameriquest's Interrogatories (Set Two) Propounded on Fidelity Entities at Response No. 7.)  The Fidelity Third-Party Defendants also produced all of the multi-transaction closing protection letter data and exemplars they were able to locate and provided a description of the relevant policies and practices via a 12-page interrogatory response.  (*See* Fidelity Third-Party Defendants' Third Amended Objections and Answers to Ameriquest's Interrogatories (Set One) Propounded on Fidelity Entities at Response No. 2.)

Now, Ameriquest seeks extensive discovery about the multi-transaction closing protection data and exemplars for certain brands and states that the Fidelity Third-Party Defendants were unable to locate during their extensive investigation.  The requested information, however, is neither necessary nor relevant as it does not specifically relate to the loans at issue in the case.  Moreover, to the extent that it does relate to relevant closing protection letters, those letters are already in Ameriquest's possession and were previously identified in Ameriquest's June 9, 2010 chart.  Given the extensive burden associated with Ameriquest's requests for information that Ameriquest already says it possesses, Ameriquest's requests are inappropriate.  *See, e.g.*, *Higgins v. Higgins*, 1997 U.S. Dist. LEXIS 2305, at *8-9 (N.D. Ill. Feb. 20, 1997) (denying motion to compel seeking documents and information that had already been produced or that could be more easily obtained from other sources); *Klein v. Leader Electric Corp.*, 81 F. Supp. 624, 625 (N.D. Ill. 1948) ("It is also obvious that one party should not be

Joanne N. Davis
Randall Manvitz
June 20, 2014
Page 3

allowed to require another to make investigation, research or compilation of data or statistics for him which he might equally as well make for himself."). Accordingly, for the reasons set forth in the Fidelity Third-Party Defendants' responses and objections, the Fidelity Third-Party Defendants objected to producing much of the information sought in Ameriquest's most recent requests.

### I.       Document Requests

During the call, the parties discussed Ameriquest's document requests and the Fidelity Third-Party Defendants' responses and objections thereto. In an effort to address some of the Fidelity Third-Party Defendants' objections, Ameriquest offered to limit the scope of some of its requests. The Fidelity Third-Party Defendants have considered Ameriquest's proposed limitations and respond as follows:

- **Request No. 10** – The Fidelity Third-Party Defendants previously agreed to produce contracts with vendors who hosted data concerning the relevant closing protection letters for those states and brands for which the Fidelity Third-Party Defendants have been unable to produce data that would have been in effect from September 2007 to the present. During our call, we were asked to expand the scope of the contracts we would produce to contracts that would have been in effect from January 1, 2004 to the present.

  Although the Fidelity Third-Party Defendants continue to believe that Ameriquest's request for documents generated before September 2007—when Ameriquest first served their third-party complaint—is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, in the interest of compromise and without waiving any of their objections, the Fidelity Third-Party Defendants agree to expand the scope their production in connection with Request No. 10 to contracts in effect from January 1, 2004 to the present.[1]

- **Request No. 11 –** The Fidelity Third-Party Defendants previously agreed to produce the requested back-up policies and procedures for electronic media or data from September 2007 to the present to the extent they relate to states and brands that generated closing-protection-letter-related data that the Fidelity Third-Party Defendants have been unable to produce. During our call, we were asked to expand the scope of our production from September 2007 to the present to January 1, 2003 to the present.

---

[1] In this letter, the Fidelity Third-Party Defendants' assertion that they will produce documents is not a representation that such documents exist or ever have existed, but instead is a representation that to the extent such documents exist and are in the possession, custody, or control of the Fidelity Third-Party Defendants, they will be produced in accordance with the terms of the Fidelity Third-Party Defendants' response to the specific request.

Joanne N. Davis
Randall Manvitz
June 20, 2014
Page 4

Although the Fidelity Third-Party Defendants continue to believe that Ameriquest's request for information prior to September 2007 is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, in the interest of compromise and without waiving any of their objections, the Fidelity Third-Party Defendants agree to expand the scope of their production in connection with Request No. 11 from September 2007 to the present to January 1, 2003 to the present.

- **Request No. 14** – Ameriquest proposed limiting this request to handwritten or electronic logs (such as an excel spreadsheet) listing manually-issued CPLs.

  In the interest of compromise and without waiving any of their objections, the Fidelity Third-Party Defendants agree to produce handwritten or electronic logs (such as an excel spreadsheet) listing manually-issued CPLs for the brands and states that manually generated multi-transaction CPLs from January 1, 2003 to the implementation of AgentTrax.

- **Request No. 17** – During our call, Ameriquest requested that the Fidelity Third-Party Defendants agree to produce exemplars of single-transaction closing protection letters.

  As we explained during our call, the Fidelity Third-Party Defendants have searched for and produced exemplar multi-transaction closing protection letters for the relevant brands and states. The Fidelity Third-Party Defendants believe that those exemplar letters (which were issued to lenders other than Ameriquest) are not relevant to Ameriquest's claims in this litigation. Nonetheless, in the interest of compromise, the Fidelity Third-Party Defendants searched for and produced those exemplar letters. Ameriquest's most recent request for single-transaction exemplars is even further afield as those letters would relate exclusively to a single non-Ameriquest transaction. Given that Ameriquest has already identified the closing protection letters it asserts are applicable to each of the loans at issue, production of "exemplar" letters is not reasonably calculated to lead to the discovery of admissible evidence, and for the other reasons set forth in the Fidelity Third-Party Defendants' responses and objections, we must decline Ameriquest's request for single-transaction exemplars.

- **Request No. 3** – Ameriquest proposed limiting its request to organization charts sufficient to identify the person(s) responsible for managing records from 2004 to the present.

  Although the Fidelity Third-Party Defendants appreciate Ameriquest's proposed limitation, it does not sufficiently address the objections enumerated in the Fidelity Third-Party Defendants' responses and objections.

Joanne N. Davis
Randall Manvitz
June 20, 2014
Page 5

- **Miscellaneous Request** – During our call, Joanne requested that the Fidelity Third-Party Defendants agree to identify the brands and states that possess pre-AgentTrax data that does not reflect that a blanket CPL was issued to Ameriquest, Argent, or Town and Country on behalf of any of the agents who closed loans at issue for those brands in those states.

  Based on our investigation to date, we have determined that Chicago Title in Connecticut possess pre-AgentTrax data and that data show that no multi-transaction CPL was issued to Ameriquest, Argent, or Town and Country on behalf of any of the agents who closed the relevant loans for Chicago Title in Connecticut. Our investigation continues and the Fidelity Third-Party Defendants will advise Ameriquest if it is determined that one or more other states/brands possess similar data.

## II.   Rule 30(b)(6) Topics

During the call, I explained that Ameriquest's deposition topics essentially seek testimony about two categories of information: (1) testimony about certain data that the Fidelity Third-Party Defendants believe they previously maintained but that they are no longer able to locate; and (2) testimony about "exemplar" multi-transaction closing protection letters that do not specifically relate to any of the three relevant lenders (Ameriquest, Argent, and Town & Country).

For the reasons set forth in the Fidelity Third-Party Defendants' responses and objections, Rule 30(b)(6) testimony concerning (2) above is inappropriate.

As I explained during our call, however, the Fidelity Third-Party Defendants are willing to provide an interrogatory response explaining what we know about the data that we believe the Fidelity Third-Party Defendants previously maintained but that they are no longer able to locate in lieu of providing deposition testimony regarding (1) above. This proposal is consistent with the approach taken by other courts when information could be provided more easily via written interrogatory response rather than via Rule 30(b)(6) testimony. *See Beloit Liquidating Trust v. Century Indem. Co.*, No. 02 C 50037, 2003 WL 355743, at *9 (N.D. Ill. Feb. 13, 2003) (agreeing with party opposing discovery that "written responses are more efficient and will adequately meet the needs of the [party seeking discovery]" and declining to require the opposing party to respond to duplicative interrogatories and produce a 30(b)(6) witness); *Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 U.S. Dist. LEXIS 667, at *26-29 (N.D. Ill. Jan. 24, 2000) (holding that a 30(b)(6) deposition notice requesting a party to designate a witness to testify generally regarding previously produced responses to interrogatories and requests for production was unduly burdensome and an "inefficient means through which to obtain otherwise discoverable information"). As in those cases, the Fidelity Third-Party Defendants' proposed approach would be more efficient while adequately meeting Ameriquest's discovery needs.

Joanne N. Davis
Randall Manvitz
June 20, 2014
Page 6

During our call, we were asked to review the information sought by the deposition topics and provide in writing the specific information that the Fidelity Third-Party Defendants would agree to provide in their proposed interrogatory response. Having now done so, the Fidelity Third-Party Defendants would agree to provide the following information in the form of an interrogatory response in lieu of providing Rule 30(b)(6) testimony on the topics set forth in Ameriquest's deposition notice:[2]

1.  The document retention and back-up policies applicable to the Data;[3]

2.  A description of the search undertaken to locate the Data in connection with the litigation;

3.  The identity of individuals/entities responsible for the custody, maintenance, preservation, and/or destruction of the Data; and

4.  A description of the back-up system or back-up media which contains or contained the Data.

As I explained during our call, the Fidelity Third-Party Defendants believe that they will be able to complete their investigation and serve the proposed interrogatory response on or before July 29, 2014. You will recall that July 29, 2014 is the date by which Ameriquest committed to respond to the Fidelity Third-Party Defendants' outstanding document requests and interrogatories, which were served on April 2, 2014, more than a month before Ameriquest served its Rule 30(b)(6) Deposition Notice.

We hope that the above-listed compromises will resolve any outstanding disputes concerning Ameriquest's deposition notice and accompanying document requests.

---

[2] The Fidelity Third-Party Defendants' assertion that they will provide certain information is not a representation that such information exists or ever has existed, but instead is a representation that to the extent such information exists and can be determined based on a reasonably diligent investigation, the Fidelity Third-Party Defendants will provide any such non-privileged information in their interrogatory response.

[3] "Data" means any pre-AgentTrax multi-transaction closing protection letter data for any of the relevant brands and states that the Fidelity Third-Party Defendants are no longer able to locate. The term "relevant brands and states" does not include those brands and states that manually generated closing protection letters before moving to AgentTrax.

Joanne N. Davis
Randall Manvitz
June 20, 2014
Page 7

Sincerely,

Andrew D. Shapiro

cc:    Al Fowerbaugh (via e-mail)
        Sandra Durkin (via e-mail)

517129