**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | ) ) MDL No. 1715 ) ) Lead Case No. 05-cv-07097 ) ) (Centralized before the Honorable ) Marvin E. Aspen ) |

## FIDELITY THIRD-PARTY DEFENDANTS' STATUS REPORT

Third-Party Defendants Alamo Title Insurance Company, Chicago Title Insurance Company, Chicago Title Company, Chicago Title Insurance Company of Michigan, Commonwealth Land Title Insurance Company, Commonwealth Land Title Company, Fidelity National Title Insurance Company, Fidelity National Title Insurance Company of New York, Lawyers Title Insurance Company, Security Union Title Insurance Company, Ticor Title Insurance Company, American Pioneer Title Insurance Company, and Transnation Title Insurance Company (collectively "Fidelity"), hereby submit their report regarding the status of discovery with Ameriquest in advance of the September 18, 2014 status conference before Magistrate Judge Martin.

### FIDELITY'S DISCOVERY REQUESTS TO AMERIQUEST

On September 18, 2014, counsel for Fidelity and Ameriquest met and conferred in person pursuant to Court order regarding each party's outstanding discovery issues. This session occurred several days after the parties' September 15 telephonic meet-and-confer conference, and is described in detail in Fidelity's September 17 status report. During the September 15 teleconference, Ameriquest refused to substantively discuss any of its responses to Fidelity's

discovery requests, claiming that it needed a full two weeks to respond to basic questions such as, "Which objections is Ameriquest standing on?" and "Will Ameriquest supplement its interrogatory responses to reference documents by Bates Number?" Fidelity memorialized the issues it raised during the September 15 teleconference in the letter attached hereto as Exhibit A. During the September 18 in-person session, Ameriquest again declined to discuss its responses, maintaining that it would respond to questions raised by Fidelity in two weeks. Ameriquest did not agree to any additional investigation or production during the in-person session, a fact that is reflected in the proposed discovery orders submitted by both parties, attached hereto as Exhibits B and C.[1]

On September 30, 2014, Ameriquest sent a 15-page letter purporting to respond to the issues raised by Fidelity during the September 15 teleconference. Ameriquest's letter, which is attached hereto as Exhibit D, shows that, nearly six months after being served with discovery requests from Fidelity, and after requesting a three-month extension of its time to respond, Ameriquest has no intention of either completing its search for or producing responsive documents and information in a timely manner.

To fully appreciate the improper gamesmanship and delay tactics Fidelity has been confronted with, Fidelity invites the Court to simply review Ameriquest's September 30 letter (Exhibit D), which typifies Ameriquest's approach to discovery in this case. Fidelity's response to the letter is attached hereto as Exhibit E.

---

[1] During the September 18, 2014 status hearing, the Court requested the parties to submit a joint proposed order outlining the agreements reached during the meet-and-confer session. Fidelity proposed a procedure for preparing a joint order whereby each party would be responsible for describing the additional investigations and discovery responses it had agreed to undertake as a result of the meet-and-confer process. Ameriquest refused to agree to this procedure for reasons that remain unclear, and the parties submitted alternative proposed orders. Ameriquest submitted a version that Fidelity had never seen before Ameriquest submitted it to the Court.

Ameriquest continues to object to providing basic discovery about its claims. For example, for months now, Ameriquest has objected to Fidelity's request for Ameriquest to identify and produce the multi-transaction closing protection letters on which Ameriquest's claims against Fidelity are based. To be clear, Fidelity simply wants Ameriquest to identify each letter that Ameriquest alleged Fidelity breached. But Ameriquest refuses to do so, claiming Fidelity's request is "premature." The September 30th letter makes it clear that Ameriquest's "premature" objection is nothing but an improper attempt by Ameriquest to condition its own discovery responses on completion of discovery by Fidelity. (*See, e.g.*, Ex. D at 2 ("We propose allowing the Ameriquest entities to complete its [sic] investigation into Fidelity's closing protection letter practices so that the Ameriquest entities may provide comprehensive responses . . . .").) This position is wholly unsupportable and contrary to Federal Rule of Civil Procedure 26(d)(2), which expressly provides that "discovery by one party does not require any other party to delay its discovery." The Advisory Committee Notes to this subdivision confirm that "one party's initiation of discovery should not wait upon the other's completion." There is no dispute that any multi-transaction letters issued by Fidelity and applicable to the loans in this case were issued *to Ameriquest*. As such, Ameriquest's objection that it is not obligated to produce information that is in Fidelity's possession is baseless. Fidelity is entitled to know what responsive information Ameriquest has and is relying on, and is entitled to this information in a timely manner.

Ameriquest offers a host of excuses for its inability to fully respond to Fidelity's requests, all of which are without merit. For example, Ameriquest argues that its investigation is impeded by the fact the companies involved in this lawsuit have been "winding down since 2007," leaving it with "few resources to enable them to respond to the discovery." (Ex. D at 3.) This argument

3

is specious for a number of reasons, not the least of which is that Ameriquest initiated this lawsuit in 2007. Furthermore, Ameriquest is well-aware that lack of a law librarian and IT staff is not a valid excuse for failing to respond to discovery.

     As another example of Ameriquest's bad faith refusal to comply with its discovery obligations, Ameriquest feigns ignorance as to what constitutes a multi-transaction closing protection letter, though it clearly understood the term well enough to object to Fidelity's definition, which explicitly states that a multi-transaction closing protection letter is a "closing protection letter which does not reference a specific loan transaction." Ameriquest also understood the term well enough to represent that it already produced "many responsive closing protection letters."

     Moreover, the responses that Ameriquest does provide to issues raised by Fidelity are few and incomplete. For each of the interrogatories and document requests, Fidelity asked whether Ameriquest had completed its production of responsive information and documents, and which objections Ameriquest was standing on to refuse to produce, or refuse to search for, otherwise responsive information or documents. Rather than answer these straightforward questions, Ameriquest seized upon them as yet another opportunity to interrogate Fidelity about its own responses. Instead of providing the date by which Ameriquest intends to identify all multi-transaction closing protection letters responsive to Interrogatory No. 1, Ameriquest asks Fidelity to withdraw its objection to producing claim-specific information during this period of common discovery, despite the fact that Fidelity has never asserted a common discovery objection to producing multi-transaction closing protection letters. Ameriquest goes so far as to seek deposition testimony from Fidelity in a letter purporting to address issues with Ameriquest's responses, making the untenable claim that it is entitled to depose any employee who disputes

already-produced testimony before even entering into a comprehensive discussion of the relevance of the information Fidelity seeks.  Ameriquest also repeatedly asks Fidelity to explain what its plainly-worded interrogatories and requests are "really seeking" after declining the opportunity to discuss any perceived ambiguities during the September 15 and September 18 meet-and-confer sessions.  Finally, Ameriquest refuses to identify documents and deposition transcripts referenced in interrogatory responses by Bates and page number, opting instead to refer generally to thousands of pages of documents without sufficient detail to allow Fidelity to readily locate and identify the relevant documents, in violation of Federal Rule of Civil Procedure 33(d).

Ameriquest is trying to delay providing substantive responses to Fidelity's discovery requests until Fidelity fully responds to Ameriquest's endless requests and follow-up requests—most of which are objectionable and improper.  Ameriquest cannot have it both ways.  Discovery obligations must be mutual.

## AMERIQUEST'S DISCOVERY REQUESTS TO FIDELITY

Fidelity's discovery efforts stand in stark contrast to Ameriquest's refusal to provide even basic discovery.  For instance, Fidelity has substantially completed its investigation and responses to the extensive discovery requests served by Fidelity.  An overview of Fidelity's search efforts and responses was submitted in the previous status report.  As a result of the September 15 and September 18 meet-and-confer sessions, Fidelity agreed to conduct additional investigation and to produce responsive information uncovered as a result of that investigation.  At Ameriquest's request, Fidelity agreed to (1) further investigate a proprietary system used by Chicago Title in Illinois, (2) determine and disclose the geographic location of each witness Fidelity identified as having knowledge about multi-transaction closing protection letters, (3)

5

search for additional informational materials related to the AgentExtra web system, and (4) investigate and produce information regarding the various brands' processes for memorializing, duplicating, or retaining manually-prepared multi-transaction closing protection letters, to the extent such processes existed. These agreements are reflected in the proposed discovery orders submitted by both parties. Fidelity served discovery responses addressing items (1)-(3) on September 29, 2014, and is in the process of supplementing its responses with the information described in item (4).

During the September 18 in-person session, Fidelity also agreed to consider expanded discovery with respect to former employees and the scope of Fidelity's search for responsive information. After exploring the feasibility of providing information in these areas, Fidelity informed Ameriquest that it may be willing to provide some this information, provided that Ameriquest agrees to reciprocal discovery. To that end, Fidelity asked Ameriquest what information it is willing to disclose from former employees and in in terms of describing the scope of its search for responsive documents and information. Fidelity will then inquire with its client to determine if it is possible for Fidelity to make a reciprocal disclosure.

As indicated in the previous status report, Ameriquest is also seeking to depose individuals who contributed their knowledge to Fidelity's interrogatory responses. Ameriquest initially noticed depositions for two of the 45 individuals, and Fidelity agreed to produce those individuals on October 17 and October 24. Ameriquest has indicated that it intends to seek discovery of others, even though it would be unduly burdensome for Fidelity to produce all 45 individuals, particularly in light of the fact that their knowledge of the issues at hand has already been disclosed to Ameriquest in the interrogatory answers. Last night, Ameriquest sent thirteen additional deposition notices, two of which contained document requests for which a response is

6

due after the date on which Ameriquest noticed the depositions. Fidelity intends to respond to those two deposition notices within the next week and to respond to the document requests within the time provided by FRCP 34.

Fidelity continues to exert great effort to provide complete responses to Ameriquest, and to work with Ameriquest to resolve outstanding discovery matters. Unfortunately, it seems that Fidelity's concessions will never satisfy Ameriquest, and that Ameriquest will continue to stonewall Fidelity's efforts to obtain an equal level of participation by Ameriquest in the discovery process.

Respectfully submitted,

Alamo Title Insurance Company, Chicago Title Insurance Company, Chicago Title Company, Chicago Title Insurance Company of Michigan, Commonwealth Land Title Insurance Company, Commonwealth Land Title Company, Fidelity National Title Insurance Company, Fidelity National Title Insurance Company of New York, Lawyers Title Insurance Company, Security Union Title Insurance Company, Ticor Title Insurance Company, American Pioneer Title Insurance Company, and Transnation Title Insurance Company.

By: /s/ Albert E. Fowerbaugh, Jr.
      One of Their Attorneys

Albert E. Fowerbaugh, Jr.
Andrew D. Shapiro
Sandra J. Durkin
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street, Ste. 1800
Chicago, IL  60602

**CERTIFICATE OF SERVICE**

      The undersigned attorney hereby certifies that a true copy of the preceding document was served on October 7, 2014 on all counsel of record, in accordance with Fed. R. Civ. P. 5, Local Rule 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

                        /s/ Albert E. Fowerbaugh, Jr.

519772