IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE AMERIQUEST MORTGAGE CO. MORTGAGE LENDING PRACTICES LITIGATION | MDL No. 1715<br><br>Lead Case No. 05-cv-07097<br><br>(Centralized before The Honorable Marvin E. Aspen)<br><br>Magistrate Judge Daniel G. Martin |
| THIS DOCUMENT RELATES TO ALL ACTIONS | |

## STATUS REPORT OF THE AMERIQUEST DEFENDANTS CONCERNING FIDELITY-ENTITIES

No progress has been made on the discovery sought by the Ameriquest parties since the parties were before the Court on September 18. Ameriquest has been following up on its efforts to find out when Fidelity lost or destroyed the closing protection letters at issue in this litigation. Fidelity refuses to produce a 30(b)(6) witness on the topic and proposed providing written interrogatory responses instead. After waiting patiently for the written information – Fidelity belatedly reported that it will not provide the requested information in any format. For example, Fidelity will not state whether and where it searched for the missing closing protection letters or identify knowledgeable former employees that would have been in a position to know this information. Once again, Fidelity has stalled discovery by not producing this foundational information requiring a motion to compel. Until the former employees are identified, Ameriquest will not be able to obtain information from those witnesses.

To change the focus of the Court's attention, Fidelity tries to paint a misleading picture of its meet and confer efforts concerning its own discovery regarding three sets of requests for production and three sets of interrogatories covering three different third-party plaintiffs Argent Mortgage Company, Ameriquest Mortgage Company, and Town and Country Credit Corporation. Fidelity first asked to meet and confer by email on August 1 and the Ameriquest related entities asked for some description of the issues. Fidelity ignored these repeated requests

1

for a simple explanation and never mentioned meeting and conferring following the status conference until the Ameriquest entities repeatedly requested that Fidelity meet and confer to explain their failure to provide the information about Fidelity's spoliation that Fidelity previously agreed to provide as part of the parties prior meet and confers. Now Fidelity makes much ado of Ameriquest's counsel stating that it would have to review the issues raised by Fidelity instead of giving "off the cuff" answers on Fidelity's previously unstated issues raised for the first time by Fidelity on September 15. This is just a red-herring, designed to re-direct the Court's attention from Fidelity's apparent spoliation of documents and refusal to provide information about the spoliation or even the prior existence of the documents directly at issue in this litigation.

### A. Background of Closing Protection Letters

Closing protection letters are indemnity agreements issued by an underwriter such as the Fidelity entities to encourage a lender such as Ameriquest to do business with them. Ameriquest required a closing protection letter before it would do business with an underwriter's issuing agent. To ensure that a closing protection letter applied to each transaction, Ameriquest required that an underwriter issue a blanket closing protection letter at the beginning of the relationship. A blanket or multi-transaction closing protection letter means that it applies to every future loan transaction.

In this litigation, Ameriquest made third-party claims against the Fidelity-entities under the closing protection letters because the letters indemnify Ameriquest from losses caused by the issuing agent. It is beyond reasonable dispute that Fidelity issues closing protection letters for practically every loan transaction, and Ameriquest has sought the closing protection letters from Fidelity through discovery. Fidelity recently produced a spreadsheet of about 20,000 closing protection letters and states that it is continuing to research such issues as whether copies of the closing protection letters were retained for many of the brands and states. For many of the brands and states, Fidelity states that it has no information about its closing protection letter practices and is not willing or able to provide exemplar letters or identify people who would have information about the closing protection letter records retention practices or issuance practices.

### B. Discovery Concerning Closing Protection Letters

Fidelity has fought tooth and nail to avoid providing any information about its closing protection letters or practices with repeated motion after motion to avoid responding. *See* historical background of Fidelity's repeated motions in Ameriquest's August 7, 2014 Supplemental Status Report. *See* Ameriquest's Supplemental Status Report [Dkt. 5521-1]. In March 2014, Fidelity finally started providing some information in response to Ameriquest's September 2012 first set of interrogatories after repeatedly obstructing discovery by claiming it was stayed or trying to disband the MDL to avoid discovery. 9/3/13 Order, MDL Dkt. 5346 at p. 3, 9. For many of the closing protection letters, Fidelity claimed to be "unable to locate" the letters or spreadsheets of data from the websites frequently used to issue the data.

Ameriquest immediately asked some basic questions, ultimately in the form of a 30(b)(6) notice and interrogatories:

1. Where did Fidelity search for the missing data and closing protection letters?
2. What was Fidelity's process to generate the letters, memorialize them, duplicate them, and retain them, and if applicable, destroy them?
3. Who are the people with information about the aforementioned issues so they can be deposed if necessary?

Fidelity refused to provide a witness. On May 22, 2014, Ameriquest filed a motion to compel [Dkt. 5470] which was subsequently stricken to allow the parties to meet and confer and Fidelity to respond to the document request. The parties met and conferred on the first day that Fidelity would agree to confer, June 12, 2014. On June 20, 2014, Fidelity provided a letter outlining information it would provide. *See* Fidelity's counsel's June 20 letter [Dkt. 5521-2]. Ameriquest agreed that it would defer filing a motion to compel on the 30(b)(6) notice until Fidelity provided the information it stated it would provide and the parties had an opportunity to further meet and confer. *See* Ameriquest's counsel's July 9 letter [Dkt. 5521-3].

Fidelity did not provide the information it said it would provide on July 29 and is giving every indication that it will not provide the information without a motion to compel. In its June 20, 2014 letter Fidelity wrote that it would describe the following:

(1) "the document retention and back-up policies applicable to the Data;"

(2) "the search undertaken to locate the Data in connection with the litigation;"

(3) "the back-up system or back-up media which contains or contained the Data;"

(4) "the identity of individuals/entities responsible for the custody, maintenance, preservation, and/or destruction of the Data;" and

(5) "[t]he destruction, loss, or inability to access or locate Missing Data or Missing Closing Protection Letters for each applicable brand and state including "(a) the date(s) it was lost, destroyed, and, or no longer accessible from the web or by an issuing agents or by Third-Party Defendants' employees; (b) electronic media and systems it has been located on; (c) any duplicates or back-ups containing the missing documents or data; (d) back-up systems for the missing documents or data; (e) any explanation why it cannot be found or what happened to it; (f) whether it was deleted or otherwise destroyed; (g) any records reflecting its status at any time; (h) why it was deleted or otherwise not maintained such that it was accessible." (30(b)(6) Topic 10).

However, Fidelity has reneged and practically no information has been provided. For example,

- Fidelity refuses to state where it looked for the data or closing protection letters despite agreeing to describe "the search undertaken to locate the Data in connection with the litigation."

- Fidelity refuses to state its processes for retaining records of closing protection letters such as duplicate copies and, or back-ups of data or copies despite stating that it would describe "the document retention and back-up policies applicable to the Data" and "the back-up system or back-up media which contains or contained the Data."

- Fidelity refuses to identify former employees who its employees believe may have knowledge of this information or produce any organizational charts or employee lists which would contain the identity of former employees who may have this information despite representing that it would describe "the identity of individuals/entities responsible for the custody, maintenance, preservation, and/or destruction of the Data."

Fidelity refuses to provide this information, and other promised but not delivered information, in any format without a court order because it will show the closing protection letters were spoliated.

4

17155238v1

Fidelity suggests it can back-track on providing the information it stated it would provide in its June 20, 2014 letter because it subsequently changed its explanation about the data from being "unable to locate" the data to not knowing whether the Fidelity website tracked what closing protection letters were issued. This makes no sense and if anything, just shows that Fidelity's proposal to provide information in lieu of a 30(b)(6) was just a delay tactic because no information was provided. Ameriquest still needs the same information (identity of people, places searched, processes for copying and memorializing, etc.) that Fidelity previously represented it would provide and Fidelity proposed providing in lieu of a 30(b)(6) deposition. Ameriquest has no choice but to re-file a motion to compel to obtain the information Fidelity said it would provide in addition to the other requested information unless Fidelity commits to making a good-faith effort to providing the information.

To try to keep Ameriquest from deposing the people who would know, Fidelity refuses to identify the former employees responsible for the websites who would have this information or persons knowledgeable about the closing protection letter practices for many of the brands with no closing protection letter documents or information produced such as American Pioneer, Commonwealth, Transnation, and Lawyer's Title. It is implausible that Fidelity is unable to determine this information and not credible that Fidelity did not have a method of determining the existence of indemnity agreements it issued encompassing millions of loans.

On September 18, although Fidelity already agreed to provide most of the information at issue, Fidelity's counsel represented that it needed two weeks to analyze Ameriquest's requests for this information and agreed to provide a response.

However, when it came time to incorporating Fidelity's agreements to respond to certain issues in an agreed order, Fidelity refused and instead insisted on adding immaterial issues that were not even at issue on September 18. The reason is now apparent – Fidelity's status conference statement recites those issues to claim that Fidelity has done something when in fact, these are meaningless issues such as Fidelity deleting a line in a discovery response and instead

reporting that it does not know the answer or adding the state of residence for about four witnesses.

On September 29, instead of committing to do anything, Fidelity conditioned any response on Ameriquest providing unstated information about its former employees and describing the scope of its search for every document but will not explain what it is proposing. See Ex. A. Instead, once again, Fidelity's counsel states that they will have to confer with Fidelity to determine what they are willing to do which is the same response as on September 18. Fidelity is just dragging its feet for providing information it already agreed to provide but apparently changed its mind.

While on its surface, a reciprocal exchange sounds fair, the Ameriquest parties have explained that they already provided information about their former employees in its interrogatory responses and for depositions. Fidelity already deposed the former heads of three departments as 30(b)(6) or percipient witnesses about Third-Party Plaintiffs' closing protection letter practices. Fidelity is not contesting their testimony so it is unknown what else Fidelity wants or why they consider others to be relevant.

### C. Deposition Scheduling of Fidelity Witnesses

#### 1. Fidelity Authors

On September 12 and 15, Ameriquest requested that Fidelity meet and confer concerning the scheduling of the depositions of two authors of two Fidelity documents concerning Fidelity's liability for the failure to provide Notice of Right to Cancel forms and training materials about closing protection letters. Three weeks later, Fidelity has yet to comment, ignoring the September 29 deadline, other than stating it will respond "in due course."

The depositions have been scheduled for October 16 and 23 in Chicago on days in advance of the depositions of two Fidelity witnesses. Fidelity has yet to comment or meet and confer about the depositions, and the Court's encouragement in this regard would be helpful.

#### 2. Other Fidelity Fact Witnesses

The Ameriquest-entities have also requested that Fidelity meet and confer about scheduling some of the 40 persons identified by Fidelity as having knowledge of their multi-transaction closing protection letter practices for the states with the most loans. Fidelity has not agreed to cooperate in the scheduling of the depositions so Ameriquest noticed the depositions of the Connecticut based witnesses for Connecticut and Rhode Island for November 3 to 7 for three hours each in Hartford, Connecticut. Scheduling is difficult because Fidelity objects to stating what information the witnesses provided, their former current or former title, or job description. Some of the depositions may ultimately be cancelled if the necessary information is obtained from the witnesses earlier in the week. Again, Fidelity has yet to comment or meet and confer about the depositions, instead, stating that they will not discuss deposition scheduling of the persons identified in their discovery responses until after October 24, a date too late given the current discovery cut-off. The Court's encouragement in this regard would be helpful.

### D. Requests for Production of Documents Propounded Against Fidelity

Fidelity has confirmed that it will not produce any further documents in response to Ameriquest's Request for Production of Documents Set Two and states that there is no reason to discuss it further. These requests mainly seek documents concerning Fidelity's interpretation of the closing protection letter. Ameriquest will need to provide the background correspondence required by this Court's recent order and then will file a motion to compel.

### E. Fidelity Paints A Misleading Picture of Its Discovery Requests

Now that it is apparent that Fidelity spoliated its records of closing protection letters, Fidelity is trying to change the subject by raising issues about the discovery it propounded. In its last status conference report, Fidelity made a misleading assertion that Ameriquest refused to meet and confer about its discovery responses before the status conference. Ameriquest responded to Fidelity's discovery on July 29. On the afternoon of Friday, August 1, 2014, Fidelity's counsel sent an email requesting a meet and confer conference for Tuesday or Wednesday, August 5 or 6, even though Ameriquest's counsel would obviously be traveling to Chicago on Wednesday for the August 7 Status Conference. *See* E-mail exchange with counsel

[Dkt. 5521-4]. On Monday, August 4, Ameriquest's counsel responded explaining that the proposed dates did not work but that they were agreeable to participating in a meet and confer call and requested a description of the issues in advance so that Ameriquest's counsel would be prepared to address them on the call. *Id.* Ameriquest's counsel also asked for a meet and confer about Fidelity's responses at the same time. *Id.* No response was received and Fidelity never mentioned meeting and conferring again until it proposed September 16 and Ameriquest suggested September 15 and after Ameriquest had for a few weeks tried to get Fidelity to meet and confer to explain its failure to provide information about spoliation. *See* E-mail exchange with counsel [Dkt. 5521-5].

When the parties again scheduled a meet and confer, Ameriquest again implored Fidelity to describe the issues in advance of the call so that Ameriquest could be prepared to address them. *Id.* Although it had over a month to write a letter, Fidelity's counsel declined. *Id.* On the meet and confer call, Ameriquest's counsel explained that they would have to subsequently respond to the issues raised and could do so within two weeks because the issues with respect to six sets of discovery were being raised for the first time. Ameriquest stated that they would endeavor to respond within two weeks, a much shorter time than Fidelity's counsel takes to respond to meet and confer issues.

As agreed, Ameriquest responded with a 15-page response addressing all of the issues raised by Fidelity during the September 15 conference call. A response from Fidelity was not received until today at 4 p.m. C.T. but a cursory review shows that Fidelity is not trying to work through discovery issues in good faith, and instead, like its status conference statement, provides such a spin on the issues that it bears little relation to reality.

Fidelity's Status conference statement fair no better as it provides a distorted and at times blatantly false recitation of discovery and the parties meet and confer efforts. For example, Fidelity claims that it defines multi-transaction closing protection letter and provides a quote. But the definition or quoted language is nowhere to be found in its interrogatories. *See* Fidelity Status Conference Statement [Dkt. 5543 at p. 4].

8

17155238v1

Additionally, the parties were unable to agree on a joint proposed order after the last status hearing because Fidelity insisted on including matters that were not at issue in the parties' status reports and were designed to give the false impression of agreements made at the September 18 meet and confer conference. Fidelity was not agreeable to inserting a footnote in the **Fidelity proposed order** that Ameriquest's counsel e-mailed to Fidelity's counsel which simply stated Ameriquest's position that: "The Ameriquest-related parties do not believe it is appropriate to include paragraphs numbered 1, 2, and 3 because Nos. 2 and 3 were not at issue in the status conference statement because they had previously been agreed to and No. 1 is not an agreement – Fidelity merely reported that it would amend a misstatement in its interrogatory response. But in the interests of cooperation and submitting a single order, Ameriquest does not object to including these paragraphs." See Ex. B. So what Ameriquest submitted to the Court was the **Fidelity Proposed Order** with the footnote inserted as Ameriquest previously explained. *Id.* Fidelity's statement in its status report that "Ameriquest submitted a version that Fidelity had never seen before," is laughable. [Dkt. 5543 at p. 2].

Fidelity also contends that Ameriquest's premature objection to its contention interrogatories is improper but there is significant authority that contention interrogatories are premature until at or near the close of discovery, and Fidelity continues to search for and produce information about its closing protection letter practices. The Ameriquest parties did respond concerning Ticor-Illinois because Fidelity provided witnesses to identify what it contends is a multi-transaction closing protection letter for that brand and jurisdiction. Ameriquest seeks the same information for the other brands and states and now it appears that Fidelity will object to the depositions about multi-transaction practices for the 300-plus loans at issue.

The Ameriquest parties will continue to work through the issues raised in the letter because most, if not all of them, should be able to be resolved.

F.  **Status of Mediation**

The parties have agreed to mediation before Judge Donald O'Connell (ret.) and are working on scheduling a date, likely in mid-November or December. Judge O'Connell has been

9

17155238v1

successful in resolving many of the third-party claims so the Ameriquest parties are hopeful that the parties are able to make some progress towards resolution.

Respectfully submitted,

Dated: October 7, 2014

By: /s/ Randall L. Manvitz
*Attorneys for the Ameriquest Defendants*

Randall L. Manvitz
Joanne N. Davies
BUCHALTER NEMER,
A Professional Corporation
55 Second Street, Suite 1700
San Francisco, CA 94105
Telephone: (415) 227-3644
Facsimile: (415) 227-0700

## CERTIFICATE OF SERVICE

I, Joanne N. Davies, hereby certify that on this 7th day of October 2014, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent by electronic mail to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: /s/ Randall Manvitz

17155238v1