# Exhibit 1

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROSE TERRY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 08 C 02475 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| AMERIQUEST MORTGAGE CO., et al., | ) | |
| | ) | |
| Defendants / Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TICOR TITLE INSURANCE CO., et al., | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

ORDER

At the heart of the dispute between Ameriquest and Ticor is, in a word, nothing.

Or, perhaps more precisely, a "." followed by nothing. Ameriquest contends that Ticor

agreed to provide a multi-transaction closing protection letter that insured Ameriquest

"in connection with" closings conducted by Ticor's issuing agents. Above the letter's

salutation is a line that states, "Borrower Reference/File Number:", and next to that

line is not a number but a period, followed by nothing else. At stake in the overall

litigation is Ameriquest's claim that Ticor must indemnify Ameriquest against the

claims of 22 plaintiffs arising from 15 mortgage loans. At stake in the current discovery

dispute is Ameriquest's attempt to obtain evidence of how Ticor, and its parent

company Fidelity National Financial, interpreted closing protection letters that did not

specify a particular loan number. This outside-the-four-corners approach to contract

interpretation has its genesis in the previously-assigned judge's ruling that the

language of the letter is ambiguous.[1] The discovery dispute has spawned 80 pages of briefing accompanied by 57 exhibits (the exhibits consume more than 1000 pages in total). Despite its length, the briefing was well crafted by both sides.

In the dispute, the parties take certain general positions that the Court rejects. First, Ticor argues that any evidence arising post-March 2006 is not relevant because that is when the last loan at issue was made. But if the multi-transaction issuance practices did not change after March 2006, the mere fact that the evidence arose after that time does not necessarily undermine its relevance. Conversely, Ameriquest seeks discovery going back to much earlier versions of the form, and going forward to Fidelity's current form and system, in an effort to bear witness to the evolution of the form to its present state. But a balance must be struck between turning over every stone going backward or forward from the time of the events directly at issue and the unreasonable burden that such a searching inquiry entails. In the rulings described below, the Court also takes into account each request's *likelihood* of discovering admissible evidence; in other words, if a request is based on a concrete and promising lead, the discovery request will be granted; if a request is based on a vague notion and sounds like a fishing expedition, it will be denied. And, as explained below, some of the discovery might (as discovery sometimes does) later lead to revisiting the limitations on discovery that have been imposed in this order. Here are the rulings:

_____

[1]Litigants legitimately expect that a "change of judges mid-way through a case will not mean going back to square one." *Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005) (citation omitted). This is an application of the law of the case doctrine. *Id.*

      1.    *Depositions of Donald Cole, Lori Drake, Lori Liberatore.* Ticor's motion to quash these depositions is granted in part and denied in part (same result with Ameriquest's converse motion to compel). Ameriquest may depose Donald Cole on what Ticor's *and* Fidelity's policies and practices were on the issuance of multi-transaction letters from April 2005 through March 2006. Not just Ticor's, but also *Fidelity*'s policies and practices, are discoverable (for this time period) because Ameriquest is entitled to clarify the now-muddy record on what exactly were Ticor's policies and practices on the issuance of multi-transaction letters. On the one hand, witness Michael Hardecopf averred that it was "Fidelity's policy," going back "several years," that local agents were barred from issuing multi-transaction letters; "senior level" approval was required. R. 728-19, Hardecopf Dep. at 56-57. On the other hand, witness Alex Ricks testified that, from 2003 until the implementation of agentTrax in around 2005, there was no such approval requirement, and instead multi-transaction letters were issued based on local-level decisions. R. 728-1, Ricks Dep. at 87-88. There was (to his knowledge) no "requirement that senior underwriting staff approve blanket closing protection letters." *Id.* at 88. "It was probably the issuing agent working with the local underwriting counsel and in conformity with whatever local procedures might have been in place," and there was "no centralized procedures, no review process, to my knowledge." *Id.* at 89.

      Ticor's previously-proffered 30(b)(6) witness on multi-transaction letters did not bring clarity. His deposition testimony revealed no or little knowledge on the subject. R. 728-20, David Scott Dep. at 224-25. Cole fits the bill, both by virtue of his job duties

and by being named by various witnesses, including Ethan Powsner, as the Fidelity executive who would be most knowledgeable about multi-transaction letters. So Cole will be deposed on Ticor's and Fidelity's policies and practices in issuing multi-transaction letters from April 2005 through March 2006. If Ameriquest needs to ask questions (it likely will) to establish what policies and practices were in effect leading directly up to April 2005,[2] those questions may be asked; if Ameriquest needs to go beyond (it likely will not) March 2006 to explain some change in policy or practice around that time, it may do so. Because Cole should be able to provide the answers that Ameriquest needs, the depositions of Lori Drake and Lori Liberatore are quashed, at least for now. Any interrogatories and document requests that correspond to the scope of the deposition of Cole, as explained above, must also be answered by Ticor or Fidelity.

2. *More Database Records.* Ameriquest's request for more database records concerning what data was inputted into closing protection letters is denied. Ticor has already produced the data for all Tristar and Northwest Title closing protection letters. R. 736, Exhs. E and F. Those spreadsheets do show blanks and periods in the Borrower Reference field for some letters. Ameriquest's request for even more data is undermined by the already-substantial database production, the burden of additional

---

[2]In other words, if the policies and practices in effect in April 2005 were adopted at some point before that time (say, hypothetically, in November 2004), then Ameriquest may ask about that directly-preceding time period (in the hypothetical, starting in November 2004 onward to March 2006).

discovery, and the soon-to-be-provided access (in the form of deposing Cole) to an actual witness who is knowledgeable about multi-transaction letters.

3.      *Training Materials*. Ameriquest seeks discovery into training materials, which appear to have been created in 2009, that instructed issuing agents to leave the Reference Number blank in order to issue a multi-transaction closing protection letter. This is a sufficiently concrete lead to follow-up on, and the request is granted. Ticor deems the instruction as a mistake; Ameriquest is entitled to test that assertion and not simply accept Ticor's *ipse dixit*. It is true that the instruction post-dates the loans that are the complaint's subject by around 3 years. But the instruction coincides directly with Ameriquest's central theory of its case, and discovery into the genesis of the instruction may connect back to March 2006 (or earlier). If the instruction does not connect back, then likely the 2009 instruction itself will not be admissible. But if it does connect back to March 2006, then the request will generate admissible evidence, and perhaps even pinpoint a policymaker (or set of policymakers) who is knowledgeable about the issuance of multi-transaction letters. This request is granted.

4.      *Other 30(b)(6) Topics*. Ameriquest asks for a 30(b)(6) deponent on the drafting history of the closing protection letters. The request is denied, for now, in light of the requirement that Donald Cole sit for a deposition. Ameriquest also asks for a deponent on Ticor's prior interpretations of the closing protection letters as covering (or not covering) TILA claims. That request is also denied; Ameriquest has not yet demonstrated that evidence outside the contractual text should be permitted as to this specific issue, as distinct from the single versus multiple transaction issue.

5.  *Claims.* Finally, Ameriquest's request for discovery as to the claims submitted to Ticor pursuant to closing protection letters is denied. The request is much too broad, involves too many claims-handling personnel, and the focus of discovery should be on the actual policymakers—such as, it appears, Donald Cole—rather than the individual claims handlers.

In conclusion, the motions of Ticor and Fidelity [R. 728] and Ameriquest [R. 731] are granted in part and denied in part, consistent with the rulings above. At the upcoming status hearing, the Court and the parties will discuss the timetable for moving forward with the permitted discovery.

ENTERED:

EDMOND E. CHANG
United States District Judge

Date: March 8, 2012

6